Littleton, Judge,
delivered the opinion of the court:
The $10,000 First Liberty Loan bond, to which was attached the six-months’ interest coupon upon which this suit is based, provided in part as follows:
The United States of America for value received promises to pay to the bearer the sum of Ten Thousand Dollars on the 15th day of June 1947, with interest at the rate of three and one-half per centum per annum payable semi-annually on December 15 and June 15 in each year until the principal hereof shall be payable, upon presentation and surrender of the interest coupons hereto attached as they severally mature. The principal and interest of this bond shall be payable in United States gold coin of the present standard of value * * *. All or any of the bonds of the series of which this is one may be redeemed and paid at the pleasure of the United States on or after June 15, 1932, or on any semiannual interest payment date or dates at the face value thereof and interest accrued at the date of redemption, on notice published at least three months prior to the redemption date and published thereafter from time to time during said three months’ period as the Secretary of the Treasury shall direct. * * *. From the date of redemption designated in any such notice interest on the bonds called for redemption shall cease, and all coupons thereon maturing after said date shall be void.
The interest coupon upon which this suit is based provided as follows:
The ÜNIted States of Ameeica will pay to bearer One Hundred and Seventy-Five Dollars ($175.00) for six months’ interest due on the fifteenth day of Dec. 1935, on $10,000 3%% bond of Liberty Loan of 1917.
It will be seen from the above that the sole question isi whether under the terms of the bond and the call for redemption thereof there was a continuing obligation on the part of the Government to pay interest subsequent to the redemption date. This question was presented, and decided by this court November 9, 1936, in Dixie Terminal Company v. United States, 83 C. Cls. 656. Since that decision the Circuit Court of Appeals for the 4th Circuit in Machen v. United States, 87 Fed. (2d) 594, held that the owner of a First Liberty Loan Sy2% gold bond was entitled to recover interest subsequent to the date on which the *324 bonds were called for redemption by reason ment’s refusal to pay the bonds in gold coin. Substantially the same reasons given by tbe court for its decision in the Machen case were urged by plaintiff and considered by this court in Dixie Terminal Company v. United States, supra. We are not persuaded by the opinion of the Circuit Court of Appeals that the reasoning and conclusion of this court in the Dixie Terminad Company case were erroneous. In that case we held that “by the agreement of the parties the obligation of the defendant to pay interest on the bond ceased upon the issuance of notice of call and passage of time to the date designated for redemption in such' notice”; that the contract “required only the giving of notice of call for redemption, which was admittedly done”, and that the court could not read into the bond a condition not justified by the language of the contract and the well-established rule that the United States is not liable for interest, as such, without its express consent.
Plaintiff contends that the call for redemption was void for the reason that when the call was' issued the Government did not intend to pay the bond in gold and that its refusal to redeem the bond, when presented, by the payment of $10,000 in gold coin, or the equivalent of the value of such gold coin, caused the interest provisions of the statute, the Treasury Department circular, and the provisions of the bond to continue to the maturity date of the bond, or until it was paid in gold coin, as an enforceable obligation of the United States. While the failure of the United States strictly to comply with the contract in respect to payment of the principal of the bond in gold coin may have given rise to a cause of action with respect to the principal, such action of the Government did not change or enlarge the specific terms of the agreement with respect to interest subsequent to June 15, 1935. Moreover, plaintiff suffered no damage by reason of the refusal of the Government to make payment in gold coin. At the time plaintiff made demand he was not engaged or authorized to engage in any business in which gold coin or gold bullion was necessary for its operation and held no license to receive or hold gold coin or gold bullion. In Perry v. United *325 States, 294 U. S. 330, the plaintiff was offered, as plaintiff herein was tendered, legal tender currency of the face amount of the Liberty bond which had been called for redemption and, in that case, the court, in speaking of the legal consequences of this tender, said:
Plaintiff demands the “equivalent” in currency of the gold coin promised. But “equivalent” cannot mean more than the amount of money which the promised gold coin would be worth to the bondholder for the purposes for which it could legally be used. That equivalence or worth could not properly be ascertained save in the light of the domestic and restricted market which the Congress had lawfully established. In the domestic transactions to which the plaintiff was limited, in the absence of special license, determination of the value of the gold coin would necessarily have regard to its use as legal tender and as a medium of exchange under a single monetary system with an established parity of all currency and coins.
The plaintiff here has not shown or attempted to show any circumstances justifying a finding that for any reason the currency tendered was not the equivalent of gold. We think therefore that he cannot successfully urge as a basis for holding the United States liable for interest subsequent to June 15, 1935, that the tendered amount of coin was not a redemption of the bond in accordance with its terms. It seems clear that in view of the lawful regulations enacted by Congress with reference to the use, receipt, or holding of gold coin or gold bullion plaintiff would have obtained no real benefit from the tender of gold coin. In Nortz v. United States, 294 U. S. 317, 328, the court said:
The asserted basis of plaintiff’s claim for actual damages is that, by the terms of the gold certificates, he was entitled, on January 17, 1934, to receive gold coin. It is plain that he cannot claim any better position than that in which he would have been placed had the gold coin then been paid to him. But, in that event, he would have been required, under the applicable legislation and orders, forthwith to deliver the gold coin to the Treasury. * * * Had plaintiff received gold coin for his certificates, he would not have been able, in view of the legislative inhibition, *326 to export it or that, in receiving the currency on that basis, he sustained any actual loss.
¡For these and other reasons stated in Dixie Terminal Company v. United States, supra, the court will not imply a -condition in the bond to the effect that unless gold coin only is paid, interest subsequent to the redemption date ■shall continue. The continuation of an interest obligation, which the contract between the parties provides shall cease upon the happening of a certain event, must rest upon more 'than a technical breach.
The only point urged by plaintiff in this case which was not briefed by plaintiff in the Dixie Terminal Company case is that the call for redemption of the First Liberty Loan bond was void because neither of the conditions enumerated in (K. S. 3698) section 131 of Title 31 of the United States Code existed. Counsel for plaintiff in the Dixie Terminal Company case referred to this section in oral ■argument but we did not discuss the section in the opinion for the reason we were of opinion that it had no important hearing upon the question presented. The section relied upon was enacted March 18, 1869, as follows:
The faith of the United States is solemnly pledged to the payment in coin or its equivalent * * * of all the interest-bearing obligations of the United States, except in cases where the law authorizing the issue of any such obligations has expressly provided that the same may be paid in lawful money or other currency than gold and silver. But none of the interest-bearing obligations not already due shall be redeemed or paid before maturity, unless at such time United States notes are convertible into coin at the' option of the holder, or unless at such time bonds of the United States bearing a lower rate of interest than the bonds to be redeemed can be sold at par in coin.
The right of the Government to call the First Liberty Loan bonds for redemption prior to maturity is governed solely by .the First Liberty Loan Act of April 24, 1917, 40 Stat. 35, as amended, pursuant to which the bond held by plaintiff was issued. That act contained the provision that “The bonds herein authorized shall be in such form and subject to such terms and conditions of issue, conver *327 sion, redemption, maturities, payment, and rate and time of payment of interest, not exceeding three and one-half per centum per annum, as the Secretary of the Treasury may prescribe.”
Treasury Department Circular 78, under which the First. Liberty Loan bonds were issued, provided that “The bonds will mature June 15, 1947, but the issue may be redeemed on or after June 15, 1932, in whole or in part, at par and accrued interest, on three months’ published notice, on any interest day; * * And the Liberty Bond provided that “All or any of the bonds of the series of which this is one may be redeemed and paid at the pleasure of the United States on or after June 15, 1932, or on any semiannual interest payment date or dates, at the face value thereof and interest accrued at the date of redemption, on notice published at least three months prior to the redemption date and published thereafter from time to time during-said three months’ period as the Secretary of the Treasury shall direct.”
We think it is clear therefore that the only terms and conditions governing the redemption of the First Liberty Loan bonds prior to maturity are those contained in the statute of 1917 authorizing their issue, the circular, and the-bond. These terms and conditions have been fully complied with. The Act of March 18, 1869 (Title 31, U. S. Code, section 731), applied solely to the redemption of bonds outstanding at the time of its enactment when the dual monetary system of the United States existed. That dual system ceased to exist upon the resumption of specie payments in 1879.
Prior to the enactment of the Act of 1869 the Government issued bonds which did not expressly state the medium of payment. It had also issued United States notes (greenbacks) which were circulating at a great discount in comparison with gold and silver, also then in circulation. In the first sentence of the Act of 1869, which is here material only for historical background, the United States pledged itself (1) to pay its United States notes in coin or its equivalent; and (2) to pay its interest-bearing obligations in coin or its equivalent, unless the law authorizing issue ex *328 pressly provided for payment in some currency other than gold or silver. The first part of the second sentence of the .Act of 1869 quoted above, in order to protect the holders of United States notes who were not to be paid coin or its equivalent, provided that the interest-bearing obligations of the Government were not to be redeemed before maturity unless at such time the holders of United States notes could convert their notes into coin; as was stated by Robert C. Schenk, one ■of the House Managers in charge of the bill (Congressional Globe, March 3, 1869, p. 1879), “That is, the bonds of the United States are not to be paid before maturity, while the noteholders are to be kept without their redemption, unless the noteholders are able at the same time to convert their notes into coin.” The last part of the second sentence, which provided “or unless at such time bonds of the United States hearing a lower rate of interest than the bonds to be redeemed •can be sold at par in coin”, was enacted in order not to make the restriction on redemption of interest-bearing obligations too burdensome and to enable the United States to refund its outstanding obligations at a lower rate of interest should the credit of the Government warrant it, even though there had been no resumption of specie payments on United ■States notes.
From the above we think it is clear that the only Government bonds to which the act applied were those then outstanding, and that the Act of 1869 became obsolete and ceased to have significance when the Government resumed specie payments on its United States notes and maintained all coins and currencies at a parity of value. Moreover the word “coin” in the Act of 1869 clearly referred to silver coin as well as gold coin. At the time the First Liberty Loan bond involved in the case at bar was called for redemption and at the date set for redemption any holder of a United States note could have presented the same to the Treasury of the United States, or any fiscal agency thereof, and received in exchange therefor silver coin.
Plaintiff is not entitled to recover and the petition is dismissed. It is so ordered.
Whaley, Judge', Williams, Judge.; GREEN, Judge; and Booth, Chief Justice, concur.