Littleton, Judge,
delivered the opinion of the court:
The question presented in this case is whether plaintiff was entitled to receive from defendant payment at a rate in excess of $20.67 plus per fine ounce for gold bullion, as *35 described in the findings, delivered by it during the period April 20 to September 18, 1933, to the United States Assay Office at Seattle, Washington, and to the United States Mint at San Francisco, California.
Plaintiff contends that this is a simple suit for just compensation for property taken by the defendant in 1933 and that while the defendant paid plaintiff certain sums totaling $894,497.43, the amount so paid was $319,745.28 less than the fair market value of the gold at the time it was taken. In support of this position, it is argued that the property here involved was not coin, currency, or monetary gold, but newly mined gold in crude and natural alloy form, unrefined, taken directly from the hands of miners; that such crude gold was a simple commodity to be valued as any other commodity; that questions as to whether the “face” or denominational value of gold money in other forms of lawful money was the fair value thereof do not arise in this case; that while the government has the right after gold has become money and has gone into circulation as a medium of exchange, either as coin, gold certificates or monetary bars, to take back that circulating medium and substitute other media of the same face and denomination— that is, one who acquires coin or other monetary gold acquires only the circulating medium and not the substance of which it is made — such action is not here material or necessary to be determined for the reason that no such considerations apply to newly mined gold as such gold has never entered the channels of trade, passed into the hands of the government or become a part of the gold base of the monetary system, that it is owned by the miner as completely as the earth from which it was extracted or the ore from which it was separated under the original patent from the government to the miner; that if the owner of the mine refrains from mining, or if he mines, the ore and refrains from extracting the metal therefrom, or if he mines and extracts but holds the crude alloy in his own hands, he does not thereby diminish the gold base of the currency system; that the government cannot compel him to extract ore from the ground or prevent him from ceasing his operations at any point up to the production of the crude bar; *36 that if he has carried his operations so far as actually to produce gold bars in the form in which those involved in this suit were produced, the government cannot compel him to surrender his property for less than its actual value; that his property right in such commodity remains and is not subject to confiscation; that howsoever the exigencies of the situation with respect to the functions of government justify regulation, they cannot justify forfeiture or confiscation, total or partial.
From a consideration of the act of March 9,1933, 48 Stat. 1, and subsequent acts on the same subject, and the Executive order of April 5,1933, and subsequent Executive orders and regulations of the Secretary of the Treasury issued pursuant to such acts and Executive orders, we are of opinion that the gold bars produced by plaintiff as described in the findings, which were 83 percent or more pure gold, constituted “gold bullion” within the meaning of the act of March 9, 1933, and the Executive order of April 5, 1933, and that in the circumstances such gold was not, as plaintiff contends, a simple commodity which had no real relation to the monetary system of the United States. Plaintiff is, therefore, not entitled to recover as just compensation, as for a taking of property under the Fifth Amendment of the Constitution, any amount in excess of the total amount paid by the defendant for the bars at the rate of $20.67 plus per fine ounce of gold under the rules applied in Nortz v. United, States, 294 U. S. 317; Perry v. United States, 294 U. S. 330; and British-American Tobacco Co., Limited, v. United States, 104 Fed. (2d) 652; 105 Fed. (2d) 935. It seems clear to us that plaintiff’s claim for payment for the gold in question of a sum in addition to $20.67 plus per fine ounce already received is not an ordinary claim for just compensation, but is in substance a claim that a limited privilege, voluntarily granted by the President by Executive order of August 29, 1933, permitting miners of gold to sell their bullion at a price, equivalent to the world market price of gold, was not conferred at an earlier date and did not extend to the gold bars of plaintiff involved in this proceeding. Of this fact we think plaintiff has no legal right to complain. We think plaintiff was in no better position than any other holder of *37 gold or gold bullion within the meaning of the act of March 9,1933, and Executive order of April 5, 1933, and the Treasury regulations merely because its gold bullion was obtained as the result of its mining operations rather than by purchase or by some other mode of acquisition.
The record conclusively shows that the term “gold bullion,” as it has been consistently understood, interpreted, and applied over a period of many years prior to the events giving rise to the controversy presented in this case, included gold bars of the character and of the gold content as the bars numbered 1176-1212, inclusive, of the plaintiff, and there is nothing in the record which would justify the conclusion that the Congress in the act of March 9, 1933, supra, and the President in the Executive order of April 5, 1933, did not intend to include in the term “gold bullion” newly mined gold melted and cast into gold bars containing as much as 83 percent pure gold, as did the gold bars of the plaintiff. It is not denied that gold bullion bears a direct relationship to and is an integral part of the monetary system of the United States. It is the recognized basis of currency and credit, and the power of Congress to regulate the monetary system and to regulate gold coin includes the power to regulate gold bullion. The limit of this power is not to be measured by confining it only to gold bullion that is .999 fine, in the absence of an expression of a purpose to do so. From a consideration of the relationship which gold bullion bears to the monetary system of the United States and the incidental authority of Congress to legislate to preserve and protect that system, the authority to requisition gold bullion was specifically recognized in Nortz, v. United States, supra, and British-Ameriocm Tobacco Co., Limited, v. Federal Reserve Bank of New York, supra. In the Nortz case it was specifically held that the Congress had power to appropriate unto the government outstanding gold bullion, gold coins, and gold certificates, and that this power could not be successfully challenged.
The act of March 9, 1933, supra, was enacted to meet the national emergency declared by the President’s proclamation of March 6, 1933. Section 2 of this act amended section 5 (b) of the Trading with the Enemy Act of October *38 6, 1917, to extend its provision to any period of national emergency declared by tbe President. It was further provided that at such times the President was authorized to “investigate, regulate or prohibit” by means of licenses, or otherwise, the “export, hoarding, melting, or earmarking of gold or silver coin or bullion, or currency, by any person within the United States or any place subject to jurisdiction thereof.” Section 3 authorized the Secretary of the Treasury whenever in his judgment “such action is necessary to protect the currency system of the United States,” to require the delivery “to the Treasurer of the United States” of “any or all gold coin, gold bullion, and gold certificates” against payment of “an equivalent amount of any other form of coin or currency coined or issued under the laws of the United States.”
Executive order of April 5, 1933, issued in the exercise of the power conferred by the act of March 9, prohibited hoarding of gold coin, gold bullion, and gold certificates and prescribed regulations for that purpose. Section 2 of this Executive order provided as follows:
All persons are hereby required to deliver on or before May 1,1933, to a Federal Eeserve Bank or a branch or agency thereof or to any member bank of the Federal Eeserve System all gold coin, gold bullion and gold certificates now owned by them or coming into their ownership on or before April 28, 1933, except the following:
The first exception related to such amount of gold as might be required for legitimate and customary use in industry, profession, or art, within a reasonable time, “including gold prior to refining and stocks of gold in reasonable amounts for the usual trade requirements of owners mining and refining such gold.” The second exception related to gold coin and gold certificates not exceeding in amount $100 belonging to any one person, and gold coin having a recognized special value to collectors of rare and unusual coins. The third exception related to gold coin and bullion earmarked or held in trust for a recognized foreign government or a foreign central bank or the Bank for International Settlements. The fourth exception re *39 lated to gold coin and bullion licensed for other proper transactions (not involving hoarding), including gold coin and bulilion imported for reexport or held pending action on applications for export license. The second exception set forth in this Executive order shows very clearly, we think, that the term “gold bullion,” as therein used related to and included refined gold bars of the gold content of the bars of plaintiff, here involved, in the hands of the owner mining and refining such gold. Section 3 of the Executive order of April 5 further provided as follows:
Until otherwise ordered any person becoming the owner of any gold coin, gold bullion or gold certificates after April 28, 1933, Stall, within three days after receipt thereof, deliver the same in the manner prescribed in Section 2; unless such gold coin, gold bullion or gold certificates are held for any of the purposes specified in paragraphs (a), (b), or (c) of Section 2; or unless such gold coin or gold bullion is held for purposes specified in paragraph (d) of Section 2 and the person holding it is, with respect to such gold coin or bullion, a licensee or applicant for license pending action thereon.
Plaintiff did not come within any of the exceptions mentioned.
It is argued on behalf of plaintiff that prior to the Executive order of August 29, 1933, great doubt prevailed in the industry and the attitude of the Treasury Department was not clear as to the extent to which the Executive orders issued between April 5 and August 29, 1933, and the regulations made thereunder, would apply, if at all, to newly mined gold in the miner’s hands. But the record fails to show that there was any doubt entertained by the responsible government officials as to whether gold bullion of the character here involved came within the terms of the Act of March 9, 1933, and Executive orders issued prior to August 29, 1933. Some owners engaged in mining and refining such gold had attempted without success to obtain a ruling that newly mined gold was not within the terms of the statute and the Executive orders. The matter was put at rest by the telegram of the Secretary of the Treasury of June 10, 1933, to the Superintendent of the Mint at San Francisco, quoted in finding 14, in which he *40 held that mining and refining companies were incorrectly under the impression that they were not required to deliver under Executive order of April 5 gold bullion produced by them; that this Executive order required delivery of all such gold, except stocks of gold in reasonable amounts for the usual trade requirements of the owner mining and refining the same. He further instructed the Mint to advise all domestic miners and refineries that they must deliver all bullion in continental United States then owned by them, except such reasonable amount not to exceed the amount which, prior to April 5, 1933, it was their practice to maintain in stock. He further held that the provision of Executive order of April S, requiring delivery to a Federal Reserve Bank, was not to be construed to exclude delivery of gold bullion to a United States Mint or Assay Office. No modification of this rule, insofar as it related to gold bullion of the character here involved, was ever made prior to the regulations issued under Executive order of August 29, 1933, which authorized the Secretary of the Treasury to receive on consignment for sale, for the benefit of the producer, gold recovered from the natural deposits in the United States and places subject to the jurisdiction thereof “subject to such rules and regulations and upon such conditions as he shall prescribe.”
Upon the facts disclosed by the record and set forth in the findings, and for the reasons hereinabove given, we are of opinion that plaintiff is not entitled to recover any amount as just compensation as for a taking of private property under the Fifth Amendment to the Constitution, in excess of the amount paid by the defendant for the gold in question.
The last question is whether the defendant should have received certain of plaintiff’s gold bars on consignment for sale for its benefit under Executive order of August 29, 1933, and regulations issued by the Secretary of the Treasury September 12, 1933. The facts with reference to this phase of the question are set forth in the findings and need not be recited here. Article 29 of Treasury regulations provided that newly mined gold should not be received on consignment under and pursuant to the Executive order of August 29, 1933, if such gold was held prior to *41 August 28, 1933, in noncompliance with the terms of the Executive order of April 5, 1933, or the regulations issued thereunder, or was held after August 28, 1933, in noncompliance with the Executive order of that date, or the regulations issued thereunder. Article 30 of the regulations of September 12, provided that “Consignments which the Mint is not satisfied were recovered from natural deposits in the United States or otherwise do not meet the requirements of these Regulations will be disposed of in accordance with applicable law.”
Plaintiff argues that these regulations were invalid but we think this contention is without merit. Work v. Rives, 267, U. S. 175, 181, 182. Plaintiff had no vested rights which were affected by the regulations of September 12.
When plaintiff presented certain of its gold bars, numbered 1195-1212, inclusive, to the San Francisco Mint and requested that they be received on consignment pursuant to the Executive order of August 29, 1933, the proper Mint officials found that such bars had been melted long before August 28, 1933, and had thereafter been held by plaintiff for an unreasonable length of time, although plaintiff had no need for such gold bars in its business. Accordingly, the Mint, in pursuance of the provisions of Articles 29 and 30 of Treasury Regulations of September 12, 1933, and in accordance with the rule adopted by it, which we think was reasonable for determining the eligibility of newly mined gold, refused to receive plaintiff’s gold bars on consignment under Executive order of August 29 for the reason that such bars did not meet the requirements of such Executive order and regulations issued thereunder. A line between gold receivable on consignment for sale under Executive order of August 29 and gold which had not theretofore been delivered in compliance with the previous Executive orders and regulations had to be drawn. Upon the facts disclosed, we think the rule applied under the regulations of the Secretary of the Treasury and the decision of the proper officials of the San Francisco Mint in regard to plaintiff’s gold bars were reasonable and proper. Even if it could be said that the correctness of the Treasury regulations of September 12,1933, and the actions of the officials of the San Francisco Mint which were ratified and approved by the Secretary of the Treasury *42 were doubtful, the question was put at rest by the provision of section 13 of the act of January 30, 1934, 48 Stat. 337, which provided that “All actions, regulations, rules, orders and proclamations heretofore taken, promulgated, made or issued by the President of the United States or the Secretary of the Treasury' under the Act of March 9, 1933, * * * are hereby approved, ratified and confirmed.” United States v. Heinzen & Co., 206 U. S. 370, 386.
Plaintiff is not entitled to recover and the petition is dismissed. It is so ordered.
Green, Judge; and Whaley, Chief Justice, concur.
Whitaker, Judge, took no part in decision of this case.