UNITED STATES of America,
Plaintiff,

v.

**TWO HUNDRED FIFTY-FOUR UNITED STATES TWENTY DOLLAR GOLD COINS et al., Defendants.**

**Civ. A. No. 31016.**

United States District Court,
E. D. Michigan, S. D.

Jan. 31, 1973.

Harold Hood, Detroit, Mich., for plaintiff.

Robert L. Rubin, Reno, Nev., for defendants.

## MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

PHILIP PRATT, District Judge.

Both plaintiff and claimant, Robert L. Rubin, move for summary judgment in this forfeiture proceeding. The plaintiff in its Memorandum in Support of Motion for Summary Judgment of Forfeiture (hereinafter cited as plaintiff's Brief) and the claimant in his Pre-Trial Statement (hereinafter cited as claimant's Statement) concede there is no issue of material fact.

On or about March 28, 1963, the claimant purchased the defendant coins

in Canada and imported them into the United States through the Detroit-Windsor Tunnel, Detroit, Michigan. Immediately after crossing the border into the United States, the claimant was arrested by agents of the United States Customs Bureau, and the gold coins which the claimant had purchased were seized from him and have been in the custody of the plaintiff since that date. Claimant was convicted of importing coins, without having obtained a license, 18 U.S.C. § 545 (1970),[1] in United States v. Rubin (Eastern District of Michigan, Criminal No. 40133).[2] On March 15, 1968, the plaintiff began this forfeiture action pursuant to 31 U.S.C. § 443 (1970)[3] since the gold coins had been imported into the United States contrary to law.[4] The parties concede that the

Gold Regulations have been amended since the institution of this action.

Claimant moves for summary judgment and objects to summary judgment in favor of plaintiff because of five legal issues. First, claimant maintains the double jeopardy clause of the Fifth Amendment bars this proceeding. Second, claimant argues this present proceeding is barred by the doctrine of res judicata. Third, claimant argues that plaintiff is collaterally estopped to deny that the defendant coins are merchandise. Fourth, claimant maintains that 31 U.S.C. § 441 is unconstitutional as applied in this case because such an application would amount to a taking of private property without compensation in violation of the Fifth Amendment. Finally, claimant asserts that this pro-

1. Whoever knowingly and willfully, with intent to defraud the United States, smuggles, or clandestinely introduces into the United States any merchandise which should have been invoiced, or makes out or passes, or attempts to pass, through the customshouse any false, forged, or fraudulent invoice, or other document or paper; or

Whoever fraudulently or knowingly imports or brings into the United States, any merchandise contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such merchandise after importation, knowing the same to have been imported or brought into the United States contrary to law—

Shall be fined not more than $10,000 or imprisoned not more than five years, or both.

Proof of defendant's possession of such goods, unless explained to the satisfaction of the jury, shall be deemed evidence to authorize conviction for violation of this section.

Merchandise introduced into the United States in violation of this section, or the value thereof, to be recovered from any person described in the first or second paragraph of this section, shall be ' forfeited to the United States.

The term "United States", as used in this section, shall not include the Philippine Islands, Virgin Islands, American Samoa, Wake Island, Midway Islands, Kingman Reef, Johnston Island, or Guam.

2. While claimant did not list as a conceded fact that plaintiff failed to ask for

forfeiture pursuant to 18 U.S.C. § 545 (1970), the whole thrust of claimant's argument assumes that plaintiff failed to seek, but should have sought, forfeiture pursuant to that section. The Court's independent review of the file in United States v. Rubin found that the plaintiff never sought forfeiture in that proceeding.

3. Any gold withheld, acquired, transported, melted or treated, imported, exported, or earmarked or held in custody, in violation of Sections 315b, 405b, 408a, 408b, 440 to 446, 733, 734, 752, 753, 754a, 754b, 767, 771, 821, 822a, 822b and 824 of this title and Sections 213, 411 to 415, 417, and 467 of Title 12, or of any regulations issued hereunder, or licenses issued pursuant thereto, shall be forfeited to the United States, and may be seized and condemned by like proceedings as those provided by law for the forfeiture, seizure, and condemnation of property imported into the United States contrary to law; and in addition any person failing to comply with the provisions of said sections or any such regulations or licenses, shall be subject to a penalty equal to twice the value of the gold in respect of which such failure occurred.

4. Plaintiff originally filed this civil action pursuant to 49 U.S.C. §§ 781–789 (1964) on July 10, 1969. Judge Talbot Smith granted plaintiff leave to amend the claim to allege as the proper statutory authority 31 U.S.C. § 443 (1970). The plaintiff subsequently amended its complaint to allege 31 U.S.C. § 443 (1970) as the appropriate statutory authority.

ceeding is abated by the amending of the regulation claimant violated. The Court will consider these arguments in the order presented to the Court.

One Lot Emerald Stones v. United States, 409 U.S. 232, 93 S.Ct. 489, 34 L. Ed.2d 438 (1972) forecloses claimant's first two contentions. In *Emerald Stones*, the claimant had been acquitted of charges of violating 18 U.S.C. § 545 (1970). Following the acquittal, the government instituted a forfeiture action under 18 U.S.C. § 545 (1970) and 19 U.S.C. § 1497 (1970). The claimant maintained the forfeiture was barred by the double jeopardy clause of the Fifth Amendment. The Court rejected this contention holding that a forfeiture, civil in nature, would not be barred by double jeopardy:

> "If for no other reason, the forfeiture is not barred by the Double Jeopardy Clause of the Fifth Amendment because it involves neither two criminal trials nor two criminal punishments, 'Congress may impose both a criminal and a civil sanction in respect to the same act or omission; for the double jeopardy clause prohibits merely punishing twice, or attempting a second time to punish criminally, for the same offense.' Helvering v. Mitchell, supra, 303 U.S. [391], at 399, [58 S.Ct. 630, at 633, 82 L.Ed. 917.] See also Marcus v. Hess, 317 U.S. 537, [63 S.Ct. 379, 8 L.Ed.2d 443] (1943)." (At 235, 93 S.Ct. at 492.)

The Court noted that the determination of whether a given sanction is civil or criminal is one of statutory construction, at 232, 93 S.Ct. 489, and provided several guidelines for making that determination. The primary criterion suggested by the Court is whether the forfeiture aids the Government in enforcement of regulations and serves to reimburse the Government for investigating and enforcement expenses. The Court held that 19 U.S.C. § 1497 (1970) satisfied that standard:

> "Forfeiture under § 1497 is a civil sanction

> \* \* \* \* \* \*

> "The § 1497 forfeiture is intended to aid in the enforcement of tariff regulations. It prevents forbidden merchandise from circulating in the United States, and, by its monetary penalty, it provides a reasonable form of liquidated damages for violation of the inspection provisions and serves to reimburse the Government for investigating and enforcement expenses. In other contexts we have recognized that such purposes characterize remedial rather than punitive sanctions. (citations). Moreover, it cannot be said that the measure of recovery fixed by Congress in § 1497 is so unreasonable or excessive that it transforms what was clearly intended as a civil remedy into a criminal penalty. (citations).

> " 'Forfeiture of goods or their value and the payment of fixed or variable sums of money are other sanctions which have been recognized as enforceable by civil proceedings. . . . In spite of their comparative severity, such sanctions have been upheld against the contention that they are essentially criminal and subject to the procedural rules governing criminal prosecutions.' " 409 U.S. at 237, 93 S.Ct. at 492.

Another criterion suggested by the Court is whether the commission of a criminal offense was required as a prerequisite to the institution of forfeiture proceedings. The Court held that such was not the case with respect to Section 1497; 409 U.S. at 232, 93 S.Ct. 489, 34 L.Ed.2d 438. The final criterion suggested by the Court is whether the sanctions are separate and distinct and are contained in different parts of the statutory scheme. The Court held this to be the case with respect to Section 1497 and 18 U.S.C. § 545 (1970). Thus, this Court must determine if 31 U.S.C. § 441 (1970) aids the Government in enforcement of regulations, reimburses the Government for investigating and enforcement expenses, requires the charge of a criminal offense to institute the forfei-

ture, and provides separate and distinct sanctions.

The test of 31 U.S.C. § 443 suggests that it is designed to aid the Government in the enforcement of its gold regulations. The forfeiture and penalty provisions of 31 U.S.C. § 443 (1970) are not so unreasonable and excessive so to create a criminal penalty instead of a reasonable means of reimbursing the Government for investigating and enforcement expenses. The test of 31 U.S.C. § 443 (1970) does not require that criminal proceedings must be instituted before forfeiture proceedings are initiated. Finally, 18 U.S.C. § 545 (1970) and 31 U.S.C. § 443 (1970) are contained in different titles of the United States Code. The difference in the severity of the sanctions of the sections also suggest they are separate and distinct. Therefore, after applying the standards provided in *Emerald Stones,* the Court concludes, as courts have previously, United States v. One Solid Gold Object in Form of a Rooster, 191 F. Supp. 198 (D.Nev.1961), that the forfeiture provision of 31 U.S.C. § 443 (1970) is civil in nature and distinct from the criminal sanctions imposed by 18 U.S.C. § 545 (1970). Since the forfeiture is civil in nature, neither double jeopardy nor res judicata bars the institution of the proceeding after a criminal conviction.

Claimant in the case at bar maintains that the determination that the United States coins in question are "merchandise" under 18 U.S.C. § 545 (1970) in the prior criminal proceeding collaterally estops the Government from characterizing the coins as "currency" in the present forfeiture proceeding. While *Emerald Stones* acknowledges that the doctrine of collateral estoppel can have application in situations where a forfeiture proceeding follows a criminal prosecution, a review of that case demonstrates that the doctrine is inapplicable in the present case.

It has been noted that 18 U.S.C. § 545 (1970) and 31 U.S.C. § 443 (1970) serve separate and distinct functions. The former is a customs criminal penalty while the latter is a civil means of enforcing the Gold Act of 1934. Because the statutes serve different functions, it follows that the United States gold coins in question could simultaneously be "merchandise" for purposes of 18 U.S.C. § 545 (1970) and "currency" for purposes of 31 U.S.C. § 443 (1970). It also follows that a finding that the United States gold coins are "merchandise" for purposes of a conviction pursuant to 18 U.S.C. § 545 (1970) does not preclude the Court from finding the United States coins to be "currency" for purposes of a 31 U.S.C. § 443 (1970) forfeiture since the statutes involve different elements.

Since collateral estoppel does not compel this Court to find the United States coins to be merchandise, the Court determines that the United States coins are "currency" within the provisions of § 443. That being so, the Court must reject claimant's argument that 31 U.S.C. § 443 (1970) permits a taking of private property since the United States coins are part of the currency of the United States and, as claimant concedes, are not protected by the "just compensation" clause of the Fifth Amendment; Norman v. B. & O. R. R., 294 U.S. 240, 55 S.Ct. 407, 79 L.Ed. 885 (1935), Nortz v. United States, 294 U.S. 317, 55 S.Ct. 428, 79 L.Ed. 907 (1935).

The forfeiture of the four Austrian ducat gold coins for violation of importation regulations is also not protected by the "just compensation" clause of the Fifth Amendment. It should first be noted that Congress has the power to regulate these foreign gold coins. Laycock v. Kenney, 270 F.2d 580 (9th Cir. 1959); cert. den., 361 U.S. 933, 80 S.Ct. 373, 4 L.Ed.2d 355 (1960), held that it was constitutional for the United States to regulate the price for gold paid to domestic miners, pursuant to 31 U.S.C. § 442 (1970), since this affected the currency of the United States. The importation of these foreign coins into the United States also affects the currency of the United States. There-

fore, the United States has the constitutional power to permit the regulation of the importation of foreign gold coins.

█ *Laycock* also disposes of the argument that the "just compensation" clause prohibits the regulation in question. *Laycock* noted with respect to the regulation there in issue:

"[A]ppellant's argument that the enforcement of the regulations deprives her of property without due process of law is without merit. The Fifth Amendment, under which she asserts her rights, forbids the taking of property without just compensation or the deprivation of it without due process of law. But this provision refers only to direct appropriation. Here there has been none. Appellant is still free to deal with her property in any way she chooses limited only by the requirement that if gold should be extracted from the property it be disposed of in compliance with the regulations. Any hardship caused appellant by these regulations is not prohibited by the Fifth Amendment which 'has never been supposed to have any bearing upon or to inhibit laws that indirectly work harm and loss to individuals.' * * * The harshness of legitimate legislation affords no reason for considering it to be unconstitutional." (270 F.2d at 592.)

The regulation in question in the instant *confiscation* also does not result in a direct appropriation. Likewise, the claimant was permitted by the regulation to do what he pleased with the foreign gold coins except importing the coins in noncompliance with the regulations. Any harm caused the property of the claimant by the regulation was only indirect. Thus the *Laycock* mandate that any hardship caused claimant by these regulations is not prohibited by the Fifth Amendment is applicable here.

█ Claimant's final argument is that amendments of the gold regulations made subsequent to the institution of this forfeiture abates this action. The argument is foreclosed by United States v. Resnick, 455 F.2d 1127 (5th Cir. 1972); modified, 459 F.2d 1390 (5th Cir. 1972). The appellants in *Resnick* were charged with melting silver currency of the United States in violation of 31 U.S.C. § 395 (1970). The appellants contended the criminal prosecution must be dismissed because the Secretary of the Treasury revoked the regulation after the indictment had been issued. The Court in *Resnick* rejected that argument. This Court also declines to adopt that contention and agrees with the following language of *Resnick* which holds that any revocation of the authorizing *legislation* can abate a prosecution:

"Appellants cite cases as recent as Bell v. Maryland, 378 U.S. 226, [84 S. Ct. 1814, 12 L.Ed.2d 822] (1964), and as ancient as United States v. Schooner Peggy, 1 Cranch 103, [2 L.Ed. 49] (1801), for the proposition that a prosecution cannot be maintained or continued after the authorizing legislation has been repealed or has expired. But here the authorizing legislation has not been repealed nor has it expired. It is the Act and not the regulation which establishes the crime and fixes the penalty. Only the administrative rule was revoked, a power lawfully delegated to the executive 'to fill up the details.' (citations). The revocation of the regulation does not bar the prosecution of the defendants in this case."

As *Resnick* suggests, 1 U.S.C. § 109 (1970) does not mention revocation of regulations since the common law did not hold that a prosecution was abated when a regulation, as opposed to statute, was revoked. It follows that the same should hold true with respect to forfeiture proceedings.

Since there is no genuine material issue of fact and since plaintiff is, as a matter of law, entitled to judgment, the Court grants summary judgment in favor of the plaintiffs pursuant to Rule 56(c).

It is so ordered.