## NORTZ *v.* UNITED STATES.*

No. 531.   Argued January 10, 1935.—Decided February 18, 1935.

---

* See note, p. 240.

318

*Mr. Otto C. Sommerich* opened the argument for the plaintiff; *Mr. Angus MacLean,* the Assistant Solicitor General, followed for the United States; and *Mr. Raymond T. Heilpern* closed for the plaintiff.

Summary of argument from the brief of *Messrs. Otto C. Sommerich, Raymond T. Heilpern,* and *Maxwell C. Katz,* for the plaintiff.

320

Summary of the brief for the United States; which bore the names of *Attorney General Cummings, Solicitor General Biggs, Assistant Solicitor General MacLean, Assistant Attorney General Sweeney,* and *Messrs. Alexander Holtzoff* and *Harry LeRoy Jones.*

MR. CHIEF JUSTICE HUGHES delivered the opinion of the Court.

The facts certified by the Court of Claims may be thus summarized: Plaintiff brought suit as owner of gold certificates of the Treasury of the United States of the nominal amount of $106,300. He alleged that defendant, by these gold certificates and under the applicable acts of Congress, had certified that there had been deposited in the Treasury of the United States $106,300 in gold coin which would be paid to the claimant, as holder, upon demand; that at the time of the issue of these certificates, and to and including January 17, 1934, a dollar in gold consisted of 25.8 grains of gold, .9 fine; that claimant was entitled to receive from defendant one ounce of gold for each $20.67 of the gold certificates; that on January 17, 1934, he duly presented the certificates and demanded their redemption by the payment of gold coin to the extent above mentioned; that on that date, and for some time prior and subsequent thereto, an ounce of gold was of the value of at least $33.43, and that claimant was accordingly entitled to receive in redemption 5104.22 ounces of gold of the value of $170,634.07; that the demand was refused; that in view of the penalties imposed under the order of the Secretary of the Treasury, approved by the President, on January 15, 1934, supplementing the order of December 28, 1933, and the laws and regulations under which those orders were issued, which the claimant alleged were unconstitutional as constituting a deprivation of property without due process of law, claimant delivered the gold certificates to defendant under protest and received in exchange currency of the United States in the sum of $106,300 which was not redeemable

in gold; and that in consequence claimant was damaged in the sum of $64,334.07, for which, with interest, judgment was demanded.

Defendant demurred to the petition upon the ground that it did not state a cause of action against the United States.

The questions certified by the Court are as follows:

"1. Is an owner of gold certificates of the United States, Series of 1928, not holding a Federal license to acquire or hold gold coins or gold certificates, who, on January 17, 1934, had surrendered his certificates to the Secretary of the Treasury of the United States under protest and had received therefor legal tender currency of equivalent face amount, entitled to receive from the United States a further sum inasmuch as the weight of a gold dollar was 25.8 grains, nine-tenths fine, and the market price thereof on January 17, 1934, was in excess of the currency so received?

"2. Is a gold certificate, Series of 1928, under the facts stated in question 1 an express contract of the United States in its corporate or proprietary capacity which will enable its owner and holder to bring suit thereon in the Court of Claims?

"3. Do the provisions of the Emergency Banking Act of March 9, 1933, and the Order of the Secretary of the Treasury dated December 28, 1933, requiring the plaintiff as owner of gold certificates as stated in question 1 to deliver the same to the Treasury of the United States in exchange for currency of an equivalent amount, not redeemable in gold, amount to a taking of property within the meaning of the Fifth Amendment to the Constitution of the United States?"

Defendant's demurrer, which admitted the facts well pleaded in the petition, did not admit allegations which amounted to conclusions of law in relation to the nature of the gold certificates or the legal effect of the legislation

under which they were issued, held, or to be redeemed. *Dillon* v. *Barnard*, 21 Wall. 430, 437; *United States* v. *Ames*, 99 U. S. 35, 45; *Interstate Land Co.* v. *Maxwell Land Co.*, 139 U. S. 569, 577, 578; *Equitable Life Assurance Society* v. *Brown*, 213 U. S. 25, 43.

Gold certificates were authorized by § 5 of the Act of March 3, 1863 (12 Stat. 709, 711), which provided that the Secretary of the Treasury might receive " deposits of gold coin and bullion " and issue certificates therefor " in denominations of not less than twenty dollars each, corresponding with the denominations of the United States notes." The coin and bullion so deposited were to be retained in the treasury for the payment of the certificates on demand. It was further provided that " certificates representing coin in the treasury may be issued in payment of interest on the public debt, which certificates, together with those issued for coin and bullion deposited, shall not at any time exceed twenty per centum beyond the amount of coin and bullion in the treasury." See R. S., § 254; 31 U. S. C. 428. Section 12 of the Act of July 12, 1882 (22 Stat. 165) contained a further provision authorizing the Secretary of the Treasury " to receive deposits of gold coin " and to issue certificates therefor, also in denominations of dollars as stated. The Act of March 14, 1900 (31 Stat. 45) prescribed that the dollar " consisting of twenty-five and eight-tenths grains of gold nine-tenths fine, . . . shall be the standard unit of value, and all forms of money issued or coined by the United States shall be maintained at a parity of value with this standard, and it shall be the duty of the Secretary of the Treasury to maintain such parity." Section 6 of that Act also authorized the Secretary of the Treasury to receive deposits of gold coin and to issue gold certificates therefor, and provided that the coin so deposited should be held by the treasury for the payment of such certificates on demand and should be " used for no other pur-

pose." And the latter clause appears in the amending Acts of March 4, 1907 (34 Stat. 1289) and of March 2, 1911 (36 Stat. 965). See 31 U. S. C. 429.

The Act of December 24, 1919 (41 Stat. 370) made gold certificates, payable to bearer on demand, "legal tender in payment of all debts and dues, public and private." And § 2 of the Joint Resolution of June 5, 1933 (48 Stat. 113), amending the Act of May 12, 1933 (48 Stat. 52) provided that "all coins and currencies of the United States . . . heretofore or hereafter coined or issued, shall be legal tender for all debts, public and private, public charges, taxes, duties and dues."

Gold certificates under this legislation were required to be issued in denominations of dollars and called for the payment of dollars.[1] These gold certificates were currency. They were not less so because the specified number of dollars were payable in gold coin, of the coinage of the United States. Being currency, and constituting legal tender, it is entirely inadmissible to regard the gold certificates as warehouse receipts.[2] They were not contracts

---

[1] The form of the gold certificates here in question is stated to be as follows:

" This certifies that there have been deposited in the Treasury of

THE UNITED STATES OF AMERICA
ONE THOUSAND DOLLARS

in gold coin payable to the bearer on demand.

" This certificate is a legal tender in the amount thereof in payment of all debts and dues public and private."

On the reverse side appear the following words:

" THE UNITED STATES OF AMERICA
ONE THOUSAND DOLLARS."

[2] The description of gold certificates in the reports of the Secretary of the Treasury, to which allusion was made in the argument at bar, could in no way alter their true legal characteristics. Reports for 1926, p. 80; 1930, pp. 29, 604, 607; 1933, p. 375.

for a certain quantity of gold as a commodity. They called for dollars, not bullion.

We may lay on one side the question whether the issue of currency of this description created an express contract upon which the United States has consented to be sued under the provisions of § 145 of the Judicial Code, 28 U. S. C. 250. Compare *Horowitz* v. *United States,* 267 U. S. 458, 461.[3] We may assume that plaintiff's petition permits an alternative view. Plaintiff urges as the gist of his contention that, by the Acts of Congress, and the orders thereunder, requiring the delivery of his gold certificates to the Treasury in exchange for currency not redeemable in gold, he has been deprived of his property, and that he is entitled to maintain this action to recover the just compensation secured to him by the Fifth Amendment. But, even in that view, the Court of Claims has no authority to entertain the action, if the claim is at best one for nominal damages. The Court of Claims " was not instituted to try such a case." *Grant* v. *United States,* 7 Wall. 331, 338; *Marion & R. V. Ry. Co.* v. *United States,* 270 U. S. 280, 282. Accordingly, we inquire whether the case which the plaintiff presents is one which would justify the recovery of actual damages.

By § 3 of the Emergency Banking Act of March 9, 1933 (48 Stat. 2), amending § 11 of the Federal Reserve Act (39 Stat. 752), the Secretary of the Treasury was authorized, whenever in his judgment it was necessary

---

[3] The point was not determined in *United States* v. *State Bank,* 96 U. S. 30, upon which plaintiff relies. The Court there decided that " where the money or property of an innocent person has gone into the coffers of the nation by means of a fraud to which its agent was a party, such money or property cannot be held by the United States against the claim of the wronged and injured party." The Court said that the basis of the liability was " an implied contract " by which the United States might well become bound in virtue of its corporate character. Its sovereignty was " in no wise involved."

" to protect the currency system of the United States," to require all persons " to pay and deliver to the treasurer of the United States any or all gold coin, gold bullion, and gold certificates " owned by them. Upon such delivery, the Secretary was to pay therefor " an equivalent amount of any other form of coin or currency coined or issued under the laws of the United States." Under that statute, orders requiring such delivery, except as otherwise expressly provided, were issued by the Secretary on December 28, 1933, and January 15, 1934. By the latter, gold coin, gold bullion, and gold certificates were required to be delivered to the treasurer of the United States on or before January 17, 1934. It was on that date that plaintiff made his demand for gold coin in redemption of his certificates and delivered the certificates under protest. That compulsory delivery, he insists, constituted the " taking of the contract " for which he demands compensation.

Plaintiff explicitly states his concurrence in the Government's contention that the Congress has complete authority to regulate the currency system of the country. He does not deny that, in exercising that authority, the Congress had power " to appropriate unto the Government outstanding gold bullion, gold coin and gold certificates." Nor does he deny that the Congress had authority " to compel all residents of this country to deliver unto the Government all gold bullion, gold coins and gold certificates in their possession." These powers could not be successfully challenged. *Knox* v. *Lee,* 12 Wall. 457; *Juilliard* v. *Greenman,* 110 U. S. 421; *Ling Su Fan* v. *United States,* 218 U. S. 302; *Norman* v. *Baltimore & Ohio R. Co.,* decided this day, *ante,* p. 240. The question plaintiff presents is thus simply one of " just compensation."

The asserted basis of plaintiff's claim for actual damages is that, by the terms of the gold certificates, he was

entitled, on January 17, 1934, to receive gold coin. It is plain that he cannot claim any better position than that in which he would have been placed had the gold coin then been paid to him. But, in that event, he would have been required, under the applicable legislation and orders, forthwith to deliver the gold coin to the Treasury. Plaintiff does not bring himself within any of the stated exceptions. He did not allege in his petition that he held a federal license to hold gold coin; and the first question submitted to us by the Court of Claims negatives the assumption of such a license. Had plaintiff received gold coin for his certificates, he would not have been able, in view of the legislative inhibition, to export it or deal in it. Moreover, it is sufficient in the instant case to point out that on January 17, 1934, the dollar had not been devalued. Or, as plaintiff puts it, " at the time of the presentation of the certificates by petitioner, the gold content of the United States dollar had not been deflated " and the provision of the Act of March 14, 1900, *supra*, fixing that content at 25.8 grains, nine-tenths fine, as the standard unit of money with which " all forms of money issued or coined by the United States " were to be maintained at a parity, was " still in effect." The currency paid to the plaintiff for his gold certificates was then on a parity with that standard of value. It cannot be said that, in receiving the currency on that basis, he sustained any actual loss.

To support his claim, plaintiff says that on January 17, 1934, " an ounce of gold was of the value at least of $33.43." His petition so alleged and he contends that the allegation was admitted by the demurrer. But the assertion of that value of gold in relation to gold coin in this country, in view of the applicable legislative requirements, necessarily involved a conclusion of law. Under those requirements, there was not on January 17, 1934, a free market for gold in the United States, or any mar-

ket available to the plaintiff for the gold coin to which he claims to have been entitled. Plaintiff insists that gold had an intrinsic value and was bought and sold in the world markets. But plaintiff had no right to resort to such markets. By reason of the quality of gold coin, " as a legal tender and as a medium of exchange," limitations attached to its ownership, and the Congress could prohibit its exportation and regulate its use. *Ling Su Fan* v. *United States, supra.*

The first question submitted by the Court of Claims is answered in the negative. It is unnecessary to answer the second question. And, in the circumstances shown, the third question is academic and also need not be answered.

*Question No. 1 is answered " No."*

Mr. Justice McReynolds, Mr. Justice Van Devanter, Mr. Justice Sutherland, and Mr. Justice Butler dissent. See *post,* p. 361.