UNITED STATES of America, Appellee,

v.

John Noehl SCHMITZ, Appellant.

No. 75–2056.

United States Court of Appeals,
Ninth Circuit.

Sept. 27, 1976.

Rehearing Denied Nov. 4, 1976.

Robert Sarno, Beverly Hills, Cal., of Fleishman, McDaniel, Brown & Weston, Hollywood, Cal., for appellant.

Dexter Lehtinen, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before ELY and TRASK, Circuit Judges, and VAN PELT,* Senior District Judge.

PER CURIAM:

This is an appeal from a conviction and sentence based upon a jury verdict of guilty on each of the three counts of an indict-

* Honorable Robert Van Pelt, Senior United States District Judge, Linclon, Nebraska, sitting by designation.

ment returned against John Noehl Schmitz. Two counts charged defendant with misdemeanor violations of filing with his employer false withholding exemption certificates, being forms W–4e for the years 1972 and 1973. The third count charged failure to make an income tax return for the calendar year 1972 stating specifically the items of his gross income and any deductions and credits to which he was entitled, it being alleged that he had received a gross income of $7,062.82 for the year, representing his one-half interest in community property income.

The sentence of confinement on each count was the same to run consecutively followed by a period of probation with certain restrictions.

The government introduced evidence from the Internal Revenue Service records that the defendant had filed an income tax return for the calendar year 1971; that he had not filed a complete income tax return for the calendar year 1972.

Copies of forms W–4e signed by the defendant and filed for the years 1972 and 1973 were offered and received in evidence, together with a stipulation that defendant had filed one form stating therein that he incurred no liability for federal income tax for the calendar year 1971 and anticipated no liability for the year 1972, and a separate form stating that he had incurred no liability for federal income tax for the calendar year 1972 and anticipated no liability for federal income tax for 1973.

Copies of the income tax return on form 1040 for 1972 were received in evidence. The first filing, marked Exhibit C, was dated 3–1–73. It had a line drawn through the boxes 1 through 5 under "Filing Status" and lines through all boxes numbered 11 through 30. Attached to Exhibit C is a W–2 form showing Twining Laboratories of Southern as employer, and defendant as employee, showing wages paid for 1972 of $14,125.63 and other compensation of $306.20 and that federal income tax of $3.92 had been withheld. Exhibit D is an amended 1040 return for 1972, dated 5–2–73 showing 0.00 in all blanks from 11 through 71

except numbers 23, 27, 29 and 30 in each of which is entered 3.92 and except for lines 32, 33 and 34 which are blank. In line 12c is typed "In lawful money, gold and silver coin of the U.S.A." followed by the numerals 0.00. In line 29 is typed "In bankers' promises to pay dollars" and in line 30 "Claimed on 843 form."

The testimony showed that defendant was employed by Twining Laboratories and received a salary in excess of $600 for each of the years 1971, 1972 and 1973. As above noted, he was paid $14,125.63 in 1972. Defendant, who took the stand, acknowledged all of this.

His defense was that by natural law and justice he was entitled to disregard the laws of the nation and state; that his actions were in accord with higher law and that he was acting in good faith.

His defense is summarized on his 1972 tax return:

"OBJECTIONS TO FORM OF RETURN

1—Invasion of privacy in violation of the 4th Amendment to the United States Constitution.

2—Possible self-incrimination in violation of 5th Amendment to the United States Constitution.

3—I have had no income in valid constitutionally lawful dollars $$$ redeemable in gold and silver, Art. I, Sec. 10, U.S.Const.

4—I object to this form and past 1040 forms because they interfere with, and obstruct, my duties and rights under the Declaration of Independence of 1776 and the United States Constitution, Article I, Sections 8 and 10, and Amendments IV, V, VI, IX and X. (*U.S. v. Sullivan*)

5—I object on legal grounds of 13th Amendment, economic slavery."

Another thrust of his defense was that he was paid by Twining Laboratories in Federal Reserve Notes which are not cash or income. Defendant is a member of the so-called "tax rebellion" leaders, others of whom have been in this court, *see U. S. v. Oaks*, 508 F.2d 1403 (9th Cir. 1974); *U. S. v.*

*Oaks,* 527 F.2d 937 (9th Cir. 1975); *United States v. Gardiner,* 531 F.2d 953 (9th Cir. 1976); *United States v. Scott,* 521 F.2d 1188 (9th Cir. 1975).

Defendant represented himself at the trial and a federal public defender acted as co-counsel.

Numerous errors are assigned. Grouping them it is a fair statement to say that they raise the question of whether the jury was properly instructed; whether comments by the prosecutor in his summation argument were prejudicial; whether the trial court by its participation in the proceedings deprived defendant of a fair trial; whether one who received Federal Reserve Notes as his income can be taxed for federal income tax and whether the indictment was unconstitutionally discriminatory and selective.

We have above sufficiently narrated the evidence submitted by the government in its case in chief to show that a case submissible to the jury was made.

It appears from the testimony that Mr. Schmitz has spent years studying income tax. He has written books on the subject and has spoken frequently urging his conclusion that dollars must be redeemable in gold or silver and that Federal Reserve Notes, not being so redeemable, are not constitutionally lawful dollars and thus cannot be legally characterized as income.

Mr. Schmitz testified that he would say in 1969 he determined that he would no longer file an income tax return. He advised the Internal Revenue Service and President Nixon as to why and later sent letters and telegrams to President Ford. His objections to filing a 1040 form are above set forth.

The testimony shows that the amended income tax form for 1972, Exhibit D, was accompanied by two books, one entitled *None Dare Call It Conspiracy* and the other *Money and Taxes.*

Mr. Schmitz was originally in construction work in twenty states. He was drafted in 1943 and turned down as 4F. He attended night school at Rockhurst College where he was given a scholarship and graduated in 1948 with a Bachelor of Science degree in business administration. He had studied economics, learned to typewrite about fifty words a minute, and was a member of "Americans for Constitutional Taxation." He ran for the nomination for Congress in Missouri and later in California, for the assembly in California and for city council in San Gabriel, California. He lost in all of his political endeavors.

It appears from his testimony that his salary at the time of trial was 7.8 Federal Reserve Notes per hour. He was unwilling to say that he received $7.80 an hour.

He called several witnesses who had heard him announce that he received no dollars as compensation; that the Federal Reserve Notes he received he considered a promise to pay and that he would refer to them as warehouse receipts. He was believed by one witness to be a man who wanted to observe God's laws and commandments. Oaks, who was a defendant in the *Oaks* cases above cited, was a witness. He testified that one's first loyalty is to God and not to government; that he drew unemployment benefits, qualifying it by saying not actually because he didn't get dollars.

Often during the trial the judge in various ways indicated that he was busy and urged Schmitz or counsel to get on with the trial. In the opinion of this court this case could have been tried in considerably less time if the presiding judge had permitted counsel for both parties and Mr. Schmitz himself, who we have above indicated is not an uneducated man, to have proceeded without interruption.

Defendant's witness, Jack Ferm's, testimony comprises nearly 34 pages of the transcript. Approximately half of these pages consist of the trial judge's examination and his comments.

The most troublesome aspect of the court's interrogation of Ferm involves his remark to the prosecutor "I think you should consider prosecuting this witness. It seems to me that under oath he has admitted he has violated the income tax laws."

Just prior to the judge's remarks, Ferm had testified that he held the same views as defendant regarding the constitutionality of Federal Reserve Notes and consequently hadn't paid income tax in 1973.

■ For a time it appeared that this panel would be divided on whether it should reverse this case for a retrial because of the trial judge's conduct. We now conclude that it should not do so under the facts of this case. The defendant had no defense to any of the three counts. His belief is unfounded that because Federal Reserve Notes are not presently payable either in gold or silver they are not taxable dollars. Federal Reserve Notes constitute legal tender, and defendant's constitutional argument has been summarily found by this court to be without merit. *United States v. Gardiner,* 531 F.2d 953 (9th Cir. 1976); *United States v. Scott,* 521 F.2d 1188, 1192 (9th Cir. 1975); *cf. Milam v. United States,* 524 F.2d 629 (9th Cir. 1974). No individual taxpayer or group of taxpayers can be allowed to so interpret the Constitution or the internal revenue rules and regulations as to avoid their application to him when he is employed, as millions of other Americans are employed, and receiving as pay Federal Reserve Notes which constitute legal tender and which pass daily from hand to hand in trade and commerce. Defendant just has no defense to the charge made in each of the three counts. No jury could fail to find him guilty.

To send the case back for retrial would require another judge becoming familiar with it because, in fairness, it should not be retried by the judge whose actions are the basis of this appeal. It would require a substantial expenditure of money to again call jurors and witnesses and to pay counsel. A trial would inconvenience many. It would require several days time of a judge in a court whose judges are very busy. We conclude that we would not be furthering justice for Mr. Schmitz in particular or the public in general to retry this case.

■ The trial court, as indicated by the transcript, had problems in the conduct of the trial and we do not claim it was imagi-

nary that he thought some person in the courtroom was making faces at him. The person whom the judge said was making faces at him was ordered ejected and the next day when the person returned the judge again ejected the person. From discussion, which does not need to be repeated in this opinion, it would appear that there had been trouble in other similar trials and the trial court's fear of trouble in this trial was not groundless. Yet, we do not believe that it is a justification for his examining witnesses and commenting upon the witnesses and their testimony in the manner disclosed by the transcript.

Canon 3A(3) of the Code of Judicial Conduct says:

"A Judge should be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, and others with whom he deals in his official capacity, . . . ."

We recognize that there are trials where parties and counsel use irritating tactics for the purpose of destroying the judge's patience and causing him or her to commit error. The record in this case is not that kind of a record. The examination even by government counsel was on occasion taken over by the trial judge. Counsel for the public defender's office was frequently interrupted as was the defendant himself. Further comment by this court as to the Canon's applicability is unnecessary.

■ The court's instructions of which complaint is made followed *U. S. v. Bishop,* 412 U.S. 346, 93 S.Ct. 2008, 36 L.Ed.2d 941 (1973) and *U. S. v. Hawk,* 497 F.2d 365 (9th Cir. 1974). The court refused to instruct on good faith because there was no evidence to support it. Defendant admitted that he was familiar with the statutes involved and that he knew and thoughtfully pursued the course that resulted in his prosecution. We conclude that there was no reversible error in the court's instructions.

The prosecutor's closing argument, to which objection is made, was in effect that the system had rallied around the defendant and that he had had a trial, that his arguments and defense were frivolous but

that the system had given him the right to a trial, and that

"Now, I would hate to see that system demeaned, because somebody comes in and says, 'I thought what I was doing was a good rebellion. It was okay in my brain. I thought it was okay. I was honest. I was legit.'

That is no defense, ladies and gentlemen. That is a flagrant disregard for the system."

Defendant himself had argued that his case would be used by the IRS "to put fear in other citizens not to attempt any similar, let's put it, disregard for the statutes passed by Congress and introduced by the IRS attorneys." "[S]ince the sovereign of this country is we, the people, and the Government is subject to the sovereign, then you are going to represent the people. . . ."

▆ In view of the argument made by defendant and the defense which he presented we do not find the prosecutor's argument unfair or intended to influence the jury to decide the case through passion or prejudice.

The consecutive sentences are well within proper limits. We conclude not to alter the sentences imposed.

The verdict of the jury, the conviction, and sentence of the defendant, are affirmed.

ELY, Circuit Judge (concurring):

The trial judge's comment to the effect that a particular witness for the defense should be prosecuted, made in the presence of the jury, is, to me, thoroughly inexplicable. In almost any other case of which I can conceive, essential fairness would require that the judgment of conviction be reversed and the appellant afforded a new trial.

In the present case, however, it is apparent that there was no defense whatsoever to the crime of which Schmitz was accused. There is hardly a doubt that Schmitz' objection to the national tax laws, and his defiance thereof, was sincere. But the tax laws in question are constitutional and, while burdensome, are generally obeyed by the responsible citizens of our democracy. This obedience probably stems from the recognition that our citizenry generally receives more valued, guaranteed rights in exchange for its tax payments than the peoples of any other country of our planet.

As I see it, it would be only through the application of the so-called doctrine of "jury nullification" that Schmitz could have been acquitted. Thus, despite the thoughtless and inappropriate comment of the district judge, I have no choice, conscientiously, save to concur in the majority's opinion.