## UNITED STATES of America, Plaintiff-Appellee,

v.

## Omer W. WARE, Defendant-Appellant.

### No. 78–1834.

United States Court of Appeals, Tenth Circuit.

Argued Sept. 11, 1979.

Decided Sept. 27, 1979.

Rehearing and Rehearing En Banc Denied Oct. 25, 1979.

John Oliver Martin, Asst. U. S. Atty., Kansas City, Kan. (James P. Buchele, U. S. Atty., Topeka, Kan., on the brief), for plaintiff-appellee.

Gary James Joslin, Salt Lake City, Utah, for defendant-appellant.

Before DOYLE, BREITENSTEIN and LOGAN, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

This is a tax evasion case in which the defendant is charged with failing to prepare and file an income tax return in accordance with the law during the years 1973, 1974 and 1975, all in violation of 26 U.S.C. § 7203. The trial was had to a jury and ended in verdicts of guilty as to all three counts. The defendant was sentenced to one year in prison on each count, sentences to run concurrently.

This is a case in which an individual is committed to not file tax returns. It is not, however, the ordinary type of income tax opposition. It presents some unusual questions.

The defendant testified in his own behalf to the effect that he did not believe that he had a legal obligation to file an income tax return for the reason that the income which he received was not dollars, but, rather, Federal Reserve notes which were mere promises to pay and not redeemable in gold or silver. He admitted that he had filed no income tax returns in 1973, 1974 and 1975.

There is no doubt about his having received income in the amounts specified in the information as follows:

The allegation in Count I was that he received $10,624.59 in 1973. His income, according to Count II, was $7,001.05 in 1974, and his income in 1975 was $13,421.28.

In each count it was alleged that, notwithstanding the amount of his income, he had willfully failed to prepare and file a tax return as required by Title 26 U.S.C. § 7203.

Defendant's contentions on appeal are:

First, that the court erred in refusing to instruct the jury in accordance with the defendant's request having to do with his mistaken good faith belief in the requirements of the law.

Next, that the court failed to instruct the jury as to the defendant's theory of the case. He cites decisions which say that an accused is entitled to submit his theory of the case to the jury even though illogical. Defendant wished to have the jury told that even if his belief was ill-founded in law, if he had a good faith conviction he was entitled to the instruction regardless of whether it conformed with the law or not.

His third contention is not unlike the other two. Here he argues that the evidence was insufficient to establish that the defendant received the requisite gross income which would require him to make a return. Also, the jury was merely told that a person was required to file a return if he had a gross income exceeding $750.00 and was filing separately, or had a gross income exceeding $2,800.00 if the return was a joint one.

## I.

Inasmuch as the appellant's third argument more or less embraces the other two, we will consider it at the outset.

■■■ Counsel's theme in point III is that the defendant believed that there was a difference between Federal Reserve notes and dollars and that he was entitled to use the actual value of his earnings in terms of gold dollars. He also believed, so it is argued, that the difference was substantial in amount and for that reason he was not required to file a return. Counsel goes on to say that regardless of the correctness of his viewpoint, it should have been considered at least in ascertaining the sufficiency of the proof as to the element of willfulness. But in his oral argument counsel has gone much further. He stated that his concern was not with the defendant, his client. Such as it was, his concern was with obtaining a ruling which would nullify the use of Treasury notes as legal tender and which would compel such obligations to be paid in gold coin. In his brief, counsel also emphasized that the argument which he was making was intended to be "profoundly serious." He added that "it is based on a very careful, logical and reasonable presentation of the law on the subject, both statutory and judicial. It deserves a judicial analysis of some merit and scholarly courtesy." What we say will very probably not fully satisfy the request which he makes. It will, however, be based on the law as it exists.

The court does not have the power to declare what is legal tender. That power is in the Congress. Article I, § 8 of the Constitution, empowers the Congress "[t]o coin Money, regulate the Value thereof, and of foreign Coin, and fix the Standard of Weights and Measures." From the very early days of the Republic, the powers to coin money and to regulate the value thereof have been broadly construed to regulate every phase of the subject of currency. Among Congress' powers is that of requiring the surrender of gold coin and gold certificates in exchange for other currency not redeemable in gold. *See Nortz v. United States*, 294 U.S. 317, 55 S.Ct. 428, 79 L.Ed. 907 (1935). Also, its power over the currency extends to every contract for the payment of money, and the obligation of the parties is therefore said to be assumed with reference to that power. *See* Legal Tender Cases, *Knox v. Lee*, 79 U.S. (12 Wall.) 457, 549, 20 L.Ed. 287 (1871); *Juilliard v. Greenman*, 110 U.S. 421, 449, 4 S.Ct. 122, 28 L.Ed. 204 (1884).

The Supreme Court has sustained the power of Congress to declare Treasury notes to be legal tender in satisfaction of antecedent debts. *Legal Tender Cases*, 79 U.S. (12 Wall.) 457, 20 L.Ed. 287 (1871). It has also been held by the Supreme Court that Congress has the power to abrogate clauses in private contracts which call for payment in gold coin, even though the contracts had been executed before the enactment by Congress of legislation which provided that it was no longer necessary to pay such obligations in gold coin. *See Norman v. Baltimore & Ohio Railroad Co.*, 294 U.S. 240, 55 S.Ct. 407, 79 L.Ed. 885 (1935).[1]

The cases cited show that this power of Congress has been regarded as plenary throughout our history. A definitive case on this is *Norman v. Baltimore & Ohio Railroad Co., supra.* This decision was announced at the height of the great Depression. It was an opinion by Chief Justice Hughes, and is referred to as the famous gold clause case. It involved the question of enforceability of bonds which contained a gold clause, that is, a clause requiring that payment be made in a stated number of dollars in gold coin of the United States of or equivalent to the standard weight and fineness existing on the date of the bond. The obligee under these bonds demanded that payment be in the stipulated quantity of gold in form of coin, but it was held that this was not a contract for payment in gold

coin as a commodity or in bullion, but, rather, a contract for the payment of money. The gold clause was construed to provide a definite standard of value and it was to protect against depreciation of the currency and discharge of the obligation by payment of a lesser value than that prescribed. Congress had passed a joint resolution nullifying such gold clause stipulations in preexisting money contract obligations and providing that such obligations were dischargeable dollar-for-dollar in any coin or currency constituting legal tender for public and private debts. The Court characterized the power of Congress as being a broad, comprehensive and rational authority over the subjects of revenue, finance and currency derived from the aggregate powers in Article I pertaining to fiscal controls. Based upon the scope and breadth of the congressional power which authorized the joint resolution of Congress set forth in 31 U.S.C. § 463, which resolution abrogated the obligation to pay in gold, it was ruled that Congress had the power to enact the joint resolution set forth below.[2] It is to be noted that the term "obligation" was stated in the joint resolution to mean an obligation of the United States. The resolution also provided that coin or currency of the United States included Federal Reserve notes and circulating notes of Federal Reserve banks and national banking associations.

1. This was a five to four decision, but it was a much harder case than the present one because there was a specific stipulation in the contract providing for payment in gold coin of the United States "of or equivalent to the standard in weight and fineness existing on the date of the bond." The decision continues to be law.

2. The exact provision that was before the Court in *Norman v. Baltimore & Ohio Railroad Co.* reads as follows:

    (a) [E]very provision contained in or made with respect to any obligation which purports to give the obligee a right to require payment in gold or a particular kind of coin or currency, or in an amount of money of the United States measured thereby, is declared to be against public policy; and no such provision shall be contained in or made with respect to any obligation hereafter incurred. Every obligation, heretofore or hereafter incurred, whether or not any such provision is

contained therein or made with respect thereto, shall be discharged upon payment, dollar for dollar, in any coin or currency which at the time of payment is legal tender for public and private debts. Any such provision contained in any law authorizing obligations to be issued by or under authority of the United States, is hereby repealed, but the repeal of any such provision shall not invalidate any other provision or authority contained in such law.

    (b) As used in this section, the term "obligation" means an obligation (including every obligation of and to the United States, excepting currency) payable in money of the United States; and the term "coin or currency" means coin or currency of the United States, including Federal Reserve notes and circulating notes of Federal Reserve banks and national banking associations.
294 U.S. at 291, 55 S.Ct. at 409 fn.1.

It is also to be noted that Congress *has* already come to grips with the question whether United States notes are legal tender in 31 U.S.C. § 452, which provides:

United States notes shall be lawful money, and a legal tender in payment of all debts, public and private, within the United States, except for duties on imports and interest on the public debt.

Section 453 of the same chapter provides:

Demand Treasury notes authorized by the Act of July 17, 1861, chapter 5, 12 Stat. 259, and the Act of February 12, 1862, chapter 20, 12 Stat. 338, shall be lawful money and a legal tender in like manner as United States notes. Treasury notes issued under the Act of July 14, 1890, chapter 708, 26 Stat. 289, shall be a legal tender in payment of all debts, public or private, except where otherwise expressly stipulated in the contract, and shall be receivable for customs, taxes, and all public dues.

Counsel has not mentioned any of the Acts of Congress dealing with this particular problem, nor has he cited any of the Supreme Court decisions which recognize the magnitude of congressional power in this area. More important is the fact that he has failed to cite the Supreme Court's landmark decision in *Norman v. Baltimore & Ohio Railroad Co., supra.*

Thus, counsel has not asked this court to overrule the Supreme Court or to declare any Acts of Congress unconstitutional. This does not mean that he has not in effect asked us to rule contrary to these statutes and Supreme Court decisions. Counsel's argument appears to assume that this court is empowered to deal with any law which is contrary to his contention and in essence to establish an entire new approach to monetary policy. We must, of course, decline this invitation. We do so not only because of lack of authority but also because it is not an inviting approach.

In sum, counsel's position is contrary to the monetary provisions of the Constitution which are set forth in Article I, § 8. These provisions plainly empower Congress to deal with all monetary problems and to declare what constitutes legal tender. His argument is also in conflict with the Acts of Congress which establish money policies as well as rulings of the Supreme Court on this subject. Therefore, the theme which he advances, namely that the court should reestablish the gold standard at least for purposes of considering his client's case, is contrary to all federal law on the subject, constitutional, statutory and judicial decisions. Counsel loses sight of the fact that a change in the standard as to legal tender would not exclusively apply to the accused. It would apply to the government as well. Thus, the change would not effect his obligation to file a tax return.

Accordingly, we must conclude that the argument made has to be rejected.

## II.

The defendant's next contention is that the trial court failed to give a sufficient instruction on the element of willfulness. He argues that it was important to emphasize that it must have been a knowing disregard of a legal duty and not a mere good faith mistake. The good faith mistake adverted to here is described as a belief that the amount received in wages, if considered in relation to the gold standard dollar which rightfully applies, would make it unnecessary for him to file a return— would reduce his real wages to a level below the standards which require such a return. It is true that the trial court did not go to that extreme. The court did, however, in our view satisfy the standard of willfulness required in a failure-to-file case. The instruction given reads as follows:

Willfulness is an essential element of the crime of failure to file an income tax return. The word "willfully," used in connection with this offense, means a voluntary, intentional violation of a known legal duty, or otherwise stated, with the wrongful purpose of deliberately intending not to file a return which defendant was required by law to file and knew he should have filed.

There is no necessity that the Government prove that the defendant had an

intention to defraud it, or to evade the payment of any taxes, for the defendant's failure to file to be willful under this provision of the law.

Defendant's conduct is not "willful" if he acted through negligence, inadvertence, or mistake, or due to his good faith misunderstanding of the requirements of the law. It should be pointed out, however, that neither a defendant's disagreement with the law, nor his own belief that such law is unconstitutional—no matter how earnestly held—constitute a defense of good faith misunderstanding or mistake. It is the duty of all citizens to obey the law whether they agree with it or not.

The only purpose necessary for the Government to prove in this case is the deliberate intention on the part of the defendant not to file tax returns, which he knew he was required to file, at the time he was required by law to file them.

Counsel for the appellant maintains that:

"If evidence was brought forward at the trial indicating that the Defendant relied upon and believed in good faith that he had not received 'dollars' during the years alleged and, because of that, he did in good faith believe that he had a legal duty to file a tax return, the jury should have been told that they could consider such evidence \* \* to determine whether the defendant's actions were the result of a good faith belief in the law."

Counsel no doubt intended to say that "he did in good faith believe that he *did not have* a legal duty to file a tax return." Regardless, however, of which meaning was intended, the court did not err in rejecting this instruction in either form.

In our view the instruction of the court was in harmony with the law. True, it failed to say that the defendant's conduct was not willful even though he acted through gross negligence. The court did, however, say that "defendant's conduct is not willful if he acted through negligence, inadvertence or mistake, or due to his good faith misunderstanding of the requirements of the law." This was, under the circumstances, an adequate instruction in the case at bar, for the evidence fully supports the conclusion that the accused acted deliberately in failing to file the returns.

In his testimony at the trial appellant said that he conducted a very careful study before pursuing the course which he followed. Included was a book called *The Big Bluff, The Constitution Against The Tax Collector.* He further said that he also read portions at least of a book called *The Federal Monster,* and still another book entitled *The Federal Reserve Hoax, The Age of Deception.* He said that he learned that the Federal Reserve note was not backed by any denomination of gold or silver and further said that this influenced him in deciding not to file a return since he never received "redeemable notes in gold or silver." One other book which he said he read was *Tax Slavery or Manhood,* by one Marvin L. Cooley. He said that this also influenced his viewpoint as to whether he had a duty to file a return. He also admitted that he had read other books of the same nature including one entitled *Tax Revolt.*

Thus, his admissions from the witness stand certainly established that he acted deliberately when he failed to file tax returns. As a result of his reading of books and attending seminars, he formulated his own personal approach as to the state of the law and adopted a subjective viewpoint on the subject. Considering that these were the circumstances which led up to his action, the instruction given that it was not willful if his action was due to his good faith understanding of the requirements of the law was adequate. The court added that "It should be pointed out, however, that neither a defendant's disagreement with the law, nor his belief that such law is unconstitutional—no matter how earnestly held—constitute a defense of good faith misunderstanding or mistake." This portion of the instruction was valid and highly germane.

The appellant rationalized that he was entitled to use a money standard different from that applicable to the remainder of the citizenry, a standard which is devoid of

reason and logic and which is not entitled to be specifically recognized in an instruction. The defendant contends that his personal belief in what the law is, or should be, supersedes the federal Constitution and statutes as construed and applied by the Supreme Court. If each citizen is a law unto himself, government will exist in name only. *See Reynolds v. United States*, 98 U.S. 145, 166–167, 25 L.Ed. 244 (1879), and *United States v. Grismore*, 564 F.2d 929, 932–933 (10th Cir. 1977).

### III.

Appellant's final point is that there was insufficient evidence from which the jury could fairly determine that the defendant's income was in a sufficient amount to require him to complete a return. We have examined the argument under this heading and we are convinced that it is another aspect of the contention which he advanced in his point III. Since we have fully considered the question of what constitutes both legal tender and money under the laws of this nation, we must resolve these matters against the accused and his counsel. We perceive no reason or basis for repeating what has been said.

We have examined the record and have concluded that the cause was tried with great care. The defendant received a fair trial and the judgment should be affirmed.

It is so ordered.

### ORDER DENYING PETITION FOR REHEARING AND SUGGESTION FOR REHEARING EN BANC

PER CURIAM.

The petition for rehearing raises a number of points, none of which have merit, but since the motion contains irresponsible statements and charges, we choose to comment on it.

The fundamental basis for the opinion is that Congress rather than the court has the power to regulate the value of money. This is a power guaranteed by the Constitution, and the conclusion that the courts do not have a role in this area cannot be questioned. The motion fails to ever come to grips with this basic issue.

It is to be noted at the outset that this court as well as the Sixth, Eighth and Ninth Circuits have had occasion to review tax evasion cases in which the contention has been advanced that salaries paid in federal reserve notes were not taxable under the Internal Revenue Code. This apparently is based on a belief that inflation has affected the value of these notes. The following are the cases that have dealt with this: *United States v. Johnson*, No. 77–1366 (10th Cir. Mar. 22, 1978); *United States v. Wright*, No. 77–1021 (10th Cir. Feb. 13, 1978); *United States v. Rifen*, 577 F.2d 1111 (8th Cir. 1978); *United States v. Daly*, 481 F.2d 28 (8th Cir.), *cert. denied*, 414 U.S. 1063, 94 S.Ct. 571, 38 L.Ed.2d 469 (1973); *United States v. Schmitz*, 542 F.2d 782 (9th Cir. 1976), *cert. denied*, 429 U.S. 1105, 97 S.Ct. 1134, 51 L.Ed.2d 556 (1977); *United States v. Gardiner*, 531 F.2d 953 (9th Cir.), *cert. denied*, 429 U.S. 853, 97 S.Ct. 145, 50 L.Ed.2d 128 (1976); *United States v. Whitesel*, 543 F.2d 1176 (6th Cir. 1976), *cert. denied*, 431 U.S. 967, 97 S.Ct. 2924, 53 L.Ed.2d 1062 (1977). The above decisions have summarily rejected arguments such as are raised here, the essence of which is that whenever economic conditions are inflationary, adjustments must be made in the values to be attributed to income and that this affects the filing requirements of Internal Revenue Code § 6012.

One of the arguments made is that a certain statute was not mentioned in the brief or in oral argument, 31 U.S.C. § 463, and that we are precluded from considering it. This is specious on its face. No more needs to be said.

Counsel complains that § 463 is not applicable to federal reserve notes. This court did not make any such suggestion in its opinion that it had direct affect on such notes. This fact does not change the basic thrust of the court's opinion, which is that Congress is exclusive authority in this field.

It is said that § 463 was repealed in October 1977. It was, however, in force in

1973, 1974 and 1975, the years involved in this case. The fact that Congress took this action does not affect the issue whether Congress had the power to regulate the currency. This section was cited in the opinion in relation to a discussion of *Norman v. Baltimore & Ohio Railroad Co.*, 294 U.S. 240, 55 S.Ct. 407, 79 L.Ed. 885 (1935), which upheld the statute as a valid exercise of the power of the Congress over the monetary system of the United States. The *Norman* case was used as an illustration of the constitutional principle that the authority of Congress over currency is plenary and that the Judiciary is not to tamper with it. It is wholly inaccurate to say, as counsel has said, that there was heavy reliance (in the opinion) on this statute. The attempt to distinguish the *Norman* case, when it is considered that it was cited only to show the extent of congressional power in the monetary area, becomes wholly off the mark.

A further argument is made that the federal reserve note does not have a value equivalent to other forms of United States currency. However, Congress has declared in 31 U.S.C. § 392 (1976) that "All coins and currencies of the United States (including Federal Reserve Notes * * *), regardless of when coined or issued, shall be legal tender for all debts, public and private, public charges, taxes, duties and dues." This statute places federal reserve notes on a par with all other forms of United States currency as a medium of exchange regardless of whatever formal differences exist among the various currency statutes. *Cf.* 31 U.S.C. § 411 (1976), and 31 U.S.C. § 452 (1976). This is the law of the land and it must be upheld.

The next contention is that the trial court erred in refusing to instruct the jury concerning whether the defendant understood that he was not required to file a return. This matter was fully considered, and the only purpose of the argument in the petition for rehearing is to express the disagreement of counsel with this court's ruling. Good faith belief of the accused as to what the law should be is inconsequential in these circumstances. *United States v.*

*Schmitz*, 542 F.2d 782, 785 (9th Cir. 1976), *cert. denied*, 429 U.S. 1105, 97 S.Ct. 1134, 51 L.Ed.2d 556 (1977); *United States v. Daly*, 481 F.2d 28 (8th Cir.), *cert. denied*, 414 U.S. 1064, 94 S.Ct. 571, 38 L.Ed.2d 469 (1973).

Finally, it is contended that this case should be heard en banc because it deals with the monetary system of the United States. This is patently insufficient and needs no further comment.

The motion together with the "brief" could be stricken due to its many inaccuracies and deficiencies. We decide, however, to allow it to remain. A cursory reading of it reveals its character.

Upon consideration by Circuit Judges Doyle, Breitenstein and Logan, to whom the case was argued and submitted, the petition for rehearing is denied.

The petition for rehearing having been denied by the panel to whom the case was argued and submitted, and no member of the panel nor judge in regular active service on the court having requested that the court be polled on rehearing en banc, Rule 35, Federal Rules of Appellate Procedure, the suggestion for rehearing en banc is denied.