UNITED STATES of America, Appellee,

v.

**Richard A. AITKEN,
Defendant, Appellant.**

**No. 84–1614.**

United States Court of Appeals,
First Circuit.

Argued Dec. 3, 1984.
Decided Feb. 25, 1985.

---

Michael W. Reilly, Boston, Mass., with whom Haussermann, Davison & Shattuck, Boston, Mass., was on brief for defendant, appellant.

William F. Weld, U.S. Atty., Boston, Mass., was on brief for appellee.

Before COFFIN and BREYER, Circuit Judges, and MALETZ,* Senior Judge.

COFFIN, Circuit Judge.

In this appeal we deal with the mental state required to be proven before one is convicted of violating certain Internal Revenue Code filing requirements. Specifically, we are asked to determine whether "wilfulness" means a subjective intent to disobey the tax laws or merely the absence of

what a jury would consider an objectively reasonable ground for failure to comply.

Appellant, a veteran fireman in the town of Rockland, Massachusetts, was charged with wilfully failing to file tax returns for 1979, 1980, and 1981, in violation of 26 U.S.C. § 7203, and with wilfully filing false withholding exemption certificates for 1981 and 1982, in violation of 26 U.S.C. § 7205. Shortly before trial was scheduled to begin, counsel for appellant, who had yet to try his first case, sought unsuccessfully to withdraw from the case because of differences in defense strategy. A two-day jury trial commenced eight days later, counsel having unsuccessfully renewed his motion to withdraw. The government's case was presented through four witnesses. To prove wilfulness the government showed that appellant had filed income tax returns for twelve years, 1966 to 1977; that he then had failed to file returns for four successive years, notwithstanding the receipt of W–2 wage and tax statements from the town; and that an Internal Revenue Agent had explained that appellant's reasons for not filing had been authoritatively discredited and that he had an obligation to file. Appellant testified that he did not believe that his wages constituted income because they involved an exchange of time for money, with no gain for him; that, although he had read widely, searched the Internal Revenue Code, and found definitions of gross income, net income, taxable income, etc., he had found no definition of income, pure and simple; and that no I.R.S. agent had discussed his understanding with him or told him he was wrong.

From the outset appellant took the position that, if he "innocently in good faith sincerely believed in his actions", then he had a valid defense to the charges against him. Counsel for the government, in colloquy with the court, took issue with the suggestion that subjective sincerity on the part of a defendant was a sufficient basis for finding a lack of wilfulness.[1]    The

---

* Of the United States Court of International Trade, sitting by designation.

1. In relevant part, the colloquy went as follows:

government ultimately contended that "in order to raise a mistake of law defense, the defendant must also show that he acted reasonably", citing *United States v. Moore*, 627 F.2d 830, 833 (7th Cir.1980), *cert. denied*, 450 U.S. 916, 101 S.Ct. 1360, 67 L.Ed.2d 342 (1981).

At the end of the trial, defendant requested several instructions on wilfulness of which the following is fairly representative:

"The defendant's conduct is not wilful and he is not guilty if you find that he failed to file a return because of mistake, inadvertence, gross negligence or due to an honest, sincere and good faith misunderstanding of the requirement of the law."

No citations of authority accompanied these requests.

The government's requests, in relevant part, were the following:

"[I]f a person acts without reasonable care or reasonable grounds in the belief that his conduct was lawful, it is for you to decide whether he acted in good faith, or whether he willfully intended to fail to file an income tax return.**

"If a defendant does not have a *reasonable* ground for his belief, then regardless of the defendant's 'sincerity of belief,' he does not have a good faith misunderstanding of the requirements of the law.***

** Based upon the instructions given in *Cooley v. United States*, 501 F.2d 1249, 1253 n. 4 (9th Cir.1974), *cert. denied*, 419 U.S. 1123 [95 S.Ct. 809, 42 L.Ed.2d 824] (1975). See also *United States v. Bishop*, 412 U.S. 346, 361–62 [93 S.Ct. 2008, 2017–18, 36 L.Ed.2d 941] (1973) ....

*** The mistake of law defense is extremely limited, and courts have held that the mistake must have been 'objectively reasonable'. *United States v. Moore*, 627 F.2d 830, 833 (7th Cir. 1980), *cert. denied*, 450 U.S. 916 [101 S.Ct. 1360, 67 L.Ed.2d 342] (1981), citing *United States v. Barker*, 546 F.2d 940, 948 (D.C.Cir.1976) and *United States v. Moore*, 586 F.2d 1029, 1033 (4th

"Mr. Weld: [T]he government disagrees ... most particularly with the proposition that if the defendant is sincere that that is a sufficient basis for a finding of lack of willfulness. I believe the law to be contrary to that. I think—

Cir.1978); *United States v. Neff*, 615 F.2d 1235, 1241 n. 6 (9th Cir.1980), *cert. denied*, 447 U.S. 925 [100 S.Ct. 3018, 65 L.Ed.2d 1117] (1980)."

It will be observed that these two requests are contradictory. The former instructs the jury to decide whether a defendant who acted unreasonably did so in good faith; the latter forbids the jury from finding good faith where a defendant's belief was unreasonable.

At the conclusion of the evidence, at a bench conference before closing arguments, the following colloquy took place:

"The Court: ... I find nothing wrong with the understanding of the law that you gentlemen apparently jointly share ....

"Mr. Weld: The most important [instruction] from my point of view is objectively reasonable.

"The Court: There is no question but that he is right so far as the law is concerned.

\* \* \* \* \* \*

"Mr. Alessi: Your Honor, would you mention the good faith?

"The Court: I will. I'll give my definition of it. That it must be reasonable."

"Mr. Alessi: It's objective.

"Mr. Weld: Objective, reasonable good faith."

Subsequently, the court gave an instruction stressing that sincerity and good motive are not enough to constitute lack of wilfulness. "There has to be a mistake concerning the requirements of the law, a mistake that is objectively reasonable in order to say that particular conduct is not willful conduct." The court also said, "A failure to file is not willful if a person acts through negligence." At the bench, after the instructions had been given, counsel for appellant said, "I have no problems with your instructions right now." Not long

The Court: However, if he sincerely misunderstood the law.
Mr. Weld: Our position is if he sincerely and reasonably misunderstood the law, then that is a defense.
The Court: Right, I agree."

thereafter the jury convicted appellant on all counts.

■ We have·traced in detail the statements of the parties and the court regarding wilfulness because our task is to determine not only whether the court erred in its instructions but also whether it committed "plain" error. Where, as here, the record reveals what looks like defense counsel's endorsement or ratification of a charge, rather than his objection to it, plain error must be shown on appeal before the jury's verdict can be overturned. Fed.R.Crim.P. 52(b); *United States v. Rosa*, 705 F.2d 1375, 1380 (1st Cir.1983). We turn, therefore, to the historical development of this tax defense both to determine what is the correct standard and to glean how obvious that standard was, or should have been, to the district court at the time that it gave its instructions to the jury.

The logical starting place is the Supreme Court. Perhaps the fountainhead case, not cited by the government below or here, is *United States v. Murdock*, 290 U.S. 389, 396, 54 S.Ct. 223, 226, 78 L.Ed. 381 (1933), in which the Court said: "Congress did not intend that a person, by reason of a bona fide misunderstanding as to his liability for the tax, as to his duty to make a return, or as to the adequacy of the records he maintained, should become a criminal by his mere failure to measure up to the prescribed standard of conduct." In *Sansone v. United States*, 380 U.S. 343, 353, 85 S.Ct. 1004, 1011, 13 L.Ed.2d 882 (1965), the Court stated that criminal liability would attach if the defendant "knew that he should have reported more income than he did...." In *United States v. Bishop*, 412 U.S. 346, 93 S.Ct. 2008, 36 L.Ed.2d 941 (1973), the Court introduced the now familiar formulation of wilfulness—"a voluntary, intentional violation of a known legal duty", *id.* at 360, 93 S.Ct. at 2017, and added that, within the tax system "[d]egrees of negligence give rise" to nothing more than "civil penalties", *id.* at 361, 93 S.Ct. at 2017. Finally, in *United States v. Pomponio*, 429 U.S. 10, 97 S.Ct. 22, 50 L.Ed.2d 12 (1976), the Court dealt with a

situation suggestive of that at bar. The taxpayers' defense was that the returns they had filed were not false because the taxpayers believed that certain payments to them were loans, not dividends, and that certain losses belonged to their partnership instead of to a corporation. The Court restated the *Bishop* formulation of wilfulness, "intentional violation of a known legal duty", *id.* at 12, 97 S.Ct. at 23, and held that the jury had been properly instructed that defendants should be found not guilty if they actually believed as they claimed, *id.* at 13, 97 S.Ct. at 24. We draw from all these cases the rather clear inference that "wilfulness" in criminal tax prosecutions is subjective.

When we turn to precedents in this circuit, we find several cases similarly suggesting that it is one's subjective state of mind that should be judged. In *Gaunt v. United States*, 184 F.2d 284, 291 & n. 4 (1st Cir.1950), *cert. denied*, 340 U.S. 917, 71 S.Ct. 350, 95 L.Ed. 662 (1951), we approved a jury instruction that wilfulness was not proven where defendant was negligent or even grossly negligent. In *United States v. Couming*, 445 F.2d 555, 557 (1st Cir.), *cert. denied*, 404 U.S. 949, 92 S.Ct. 291, 30 L.Ed.2d 266 (1971), a prosecution for knowing failure to possess a draft registration certificate, we described wilfulness as not necessarily requiring an "evil" motive but as applying to one who "deliberately refrained from complying" with the requirements of the law. And in *United States v. Lachmann*, 469 F.2d 1043, 1046 (1st Cir. 1972), *cert. denied*, 411 U.S. 931, 93 S.Ct. 1897, 36 L.Ed.2d 390 (1973), we described the mental state of wilfulness as involving a "deliberate intent to disobey the filing requirement", *id.* at 1046, after noting that "we would reject the concept that in this criminal statute negligence or oversight is to be equated with willfulness", *id.* at 1045.

As for the state of the law in other circuits at the time of the trial below, our partial review indicates that, apart from the case principally invoked by the government to support its "objectively reasonable" request, *United States v. Moore*, 627

F.2d at 833,[2] some six other circuits, in addition to our own, either explicitly or implicitly have required proof of subjective intent to disobey the filing requirement: Second Circuit—*United States v. Kraeger,* 711 F.2d 6, 7 (1983) (while a good faith disagreement with the law is not a defense, a good faith misunderstanding of it is); *United States v. Ingredient Technology Corp.,* 698 F.2d 88, 97, *cert. denied,* 462 U.S. 1131, 103 S.Ct. 3111, 77 L.Ed.2d 1366 (1983) (issue of subjective intent is properly sent to jury so long as there is evidence as to what defendant genuinely thought); Fourth Circuit—*Yarborough v. United States,* 230 F.2d 56, 61, *cert. denied,* 351 U.S. 969, 76 S.Ct. 1034, 100 L.Ed. 1487 (1956) (Chief Judge Parker, for the court, wrote: "Ignorance of the law is no defense to crime, except that, where wilfulness is an element of the crime, ignorance of a duty imposed by law may negative wilfulness in failure to perform the duty."); Fifth Circuit—*Mann v. United States,* 319 F.2d 404, 409, 410 (1963), *cert. denied,* 375 U.S. 986, 84 S.Ct. 520, 11 L.Ed.2d 474 (1964) (court found an instruction that invited the jury "to speculate as to what any other person ... would reasonably have expected to be the consequence of [his] conduct" to be plain error)[3]; Sixth Circuit—*Battjes v. United States,* 172 F.2d 1, 4 (1949) (a bona fide misconception of the law is a defense to failure to file regardless of

the general presumption that one knows the law); Ninth Circuit—*Cooley v. United States,* 501 F.2d 1249, 1253 n. 4 (1974), *cert. denied,* 419 U.S. 1123, 95 S.Ct. 809, 42 L.Ed.2d 824 (1975) ("[I]f a person acts without reasonable ground for belief that his conduct is lawful, it is for the jury to decide whether he acted in good faith or whether he willfully intended to fail to file a tax return."); Tenth Circuit—*Haigler v. United States,* 172 F.2d 986, 989 (1949) (Judge Murrah wrote for the court: "We think it irreconcilably inconsistent to say in one breath that guilty knowledge of the consequences of the act done is the essence of the offense, and in the next breath say that ignorance of the consequences of those acts is no excuse."); *United States v. Ware,* 608 F.2d 400, 405 (1979) (while good faith disagreement with the law is not a defense, a good faith misunderstanding of its requirements is).

◼ This survey leads us to conclude that the overwhelming weight of authority in the field of criminal prosecutions for failure to file tax returns and for tax evasion insists on a subjective standard for assessing wilfulness.

◼ We acknowledge that the court in *Moore* relied upon a well-recognized principle when it stated that "mistake of law" is an "extremely limited" defense, 627 F.2d at 833 (citing principally a case involving the

---

**2.** We note that the Seventh Circuit seems to have embraced the subjective standard before and after *Moore.* Two weeks before *Moore* was decided, a panel declared a reasonableness charge by the same trial judge who presided in *Moore* to be "totally misplaced" in a tax evasion prosecution but, under the circumstances, harmless error. *United States v. Walsh,* 627 F.2d 88, 93 (7th Cir.1980). Two years later in *United States v. Lewis,* 671 F.2d 1025, 1027 (7th Cir.1982), the court dealt with a claim that defendant believed that if he did not have funds to include with a return, he had no obligation to file. The court implied at one point that if defendant's requested charge had been couched in simpler language, the trial court would have been obliged to instruct the jury to acquit if it found that defendant really did not know he had to file. Shortly thereafter, in *United States v. Oggoian,* 678 F.2d 671, 674 (7th Cir.), *cert. denied,* 459 U.S. 1018, 103 S.Ct. 380, 74 L.Ed.2d 512 (1982), the court approved a charge that

"mere negligence, even gross negligence, was not sufficient to establish willfulness." But in *United States v. Anton,* 683 F.2d 1011, 1018 n. 9 (7th Cir.1982), the court harked back to *Moore* in an approving footnote. Most recently the court, in *United States v. Koliboski,* 732 F.2d 1328, 1331 & n. 2 (7th Cir.1984), contented itself with affirming an instruction that omitted reference to "bad purpose" and centered upon the *Pomponio-Bishop* language, "a voluntary, intentional violation of a known legal obligation".

**3.** Only two weeks after the instructions were given by the district court in the case at bar the Fifth Circuit decided *United States v. Burton,* 737 F.2d 439, 441 (1984), in which it held that a taxpayer's claim that wages are not income need not be objectively reasonable, referring to earlier cases in that and other circuits. The court distinguished the contrary discussion in *Moore* as dicta. *Id.* at 443.

illegal burglary of a psychiatrist's office by the Watergate "footsoldiers", *United States v. Barker*, 546 F.2d 940, 948 (D.C. Cir.1976)). However, we conclude that importing the general doctrine that mistake of law is seldom a defense into criminal tax prosecutions, where the statutes require a wilful failure to report, is inappropriate.[4]

This conclusion is implicit in the series of Supreme Court cases beginning with *Murdock*. That internal revenue reporting and filing requirements are an enclave apart is recognized. *See, e.g., Morissette v. United States*, 342 U.S. 246, 260 n. 16, 265 & n. 26, 72 S.Ct. 240, 248 n. 16, 250–51 & n. 26, 96 L.Ed. 288 (1952); *United States v. Freed*, 401 U.S. 601, 615 n. 6, 91 S.Ct. 1112, 1121 n. 6, 28 L.Ed.2d 356 (1971) (Brennan, J., concurring). Within this enclave the mistake of law defense has particular vitality, and the key is whether the defendant honestly held a mistaken belief as to what the law requires.

A recent student comment makes this point precisely in discussing a taxpayer's failure to report certain receipts:

"The law might very clearly tax specified receipts, yet a defendant might be able to prove that he honestly believed the receipts were nontaxable, and therefore that he did not act willfully. Whether the defendant's beliefs about the legality of his actions were right or wrong, reasonable or unreasonable, is irrelevant to willfulness; the only issue is whether those beliefs were in fact held." Comment, *Criminal Liability for Willful Evasion of an Uncertain Tax*, 81 Col.L. Rev. 1348, 1356 (1981) (footnotes omitted).

More generally, Section 2.04(1) of the 1962 Proposed Official Draft of the Model Penal Code clearly sets forth the critical elements of the mistake of law defense.

"(1) Ignorance or mistake as to a matter of fact or law is a defense if:

(a) the ignorance or mistake negatives the purpose, knowledge, belief, recklessness or negligence required to establish a material element of the offense; or

(b) the law provides that the state of mind established by such ignorance or mistake constitutes a defense." Model Penal Code § 204(1) (Proposed Official Draft 1962).

The comment to this provision in Tentative Draft 4 explains why in prosecutions of the sort involved in this case the reasonableness of a mistake of law should *not* be a factor.

"What justification can there be, however, for requiring that ignorance or mistake be reasonable if the crime or the element of the crime involved requires acting purposely or knowingly for its commission? The fact seems to be that formulations of this kind are drawn from the law of homicide, where negligence suffices for liability; and that they are not and they can not be applied with generality to crimes in which the ignorance or mistake is relevant to the existence of an essential element of purpose or of knowledge." Model Penal Code, Comments § 204(1) at 136 (Tentative Draft 4 1955).

■ In accordance with this reasoning, we find that the mistake of law defense is available in this genre of criminal tax prosecutions and that the mistake of law analysis comports with the *Murdock* linking of wilfulness to a lack of "bona fide misunderstanding as to ... liability for the tax". We therefore conclude that the court's "objectively reasonable" instructions were erroneous.

■ The more difficult question is whether the instructions constituted "plain error". As we said in *McMillen v. United States*, 386 F.2d 29, 35 (1st Cir.1967), *cert. denied*, 390 U.S. 1031, 88 S.Ct. 1424, 20 L.Ed.2d 288 (1968):

"In the words of Fed.R.Crim.P. 52(b) we are concerned only with any errors 'affecting substantial rights'. As the Supreme Court stated in *United States v. Atkinson*, 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936), we may—and

---

**4.** We do not, of course, refer to deliberate refus-   als to file based on protest of national policy.

we must—notice errors which 'seriously affect the fairness ... of judicial proceedings.' The circumstances must be 'exceptional' and the error must be such as to prejudice 'in a substantial manner appellant's right to a fair trial.' *Polansky v. United States*, 332 F.2d 233, 235 (1st Cir.1964)."

We have concluded that we ought to award defendant a new trial under the "plain error" doctrine.

We begin by noting the error was critical in the context of this case. The whole trial focused upon the defendant's claim that he actually believed he was not legally obliged to pay taxes. The government, in summarizing the case for the jury, underscored the importance of the "reasonableness" instruction, stating,

> "The most significant instruction that the Judge will give you from my point of view is when he tells you that in order for the defendant to have availed himself of his belief in his actions as a defendant, that has to be not only in good faith, sincere belief, but objectively reasonable. The belief must be objectively reasonable."

As a result, the jury likely focused upon the question of whether *they—as typical citizens—could have reasonably* believed that wages did not constitute income rather than on the question of whether *appellant actually* believed that notion.

Notwithstanding this, we acknowledge that it could be argued that the district judge should not have been expected to recognize the error sua sponte. The government, after all, cited to the court the Seventh Circuit's case, *United States v. Moore*, which supports the "reasonableness" instruction, even though it did not begin to reflect the overall state of the law on wilfulness. *See* 2 E. Devitt and C. Blackmar, *Federal Jury Practice and Instructions* § 35.31 (3d ed. 1977). Nor was the court helped by the defense, which furnished no cases and seemed to concede the issue.

Whether or not, however, the court should have recognized the error, Fed.R. Crim.P. 52(b) provides that "defects affecting substantial rights may be noticed although they were not brought to the attention of the court." *Cf. United States v. Atkinson*, 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936) ("In exceptional circumstances, especially in criminal cases, appellate courts, in the public interest, may, of their own motion, notice errors to which no exception has been taken, if the errors are obvious, *or* if they otherwise seriously affect the fairness, integrity or public reputation of judicial proceedings.") (emphasis supplied). Since the erroneous instruction determined the jury's standard of judgment on the basic issue in the case, we are compelled to conclude that it affected defendant's substantial rights.

Even though the evidence against appellant was strong—twelve years of prior filings, receipt of W–2 forms during the years at issue, and alleged advice from an I.R.S. agent that appellant's views of the requirements were wrong—we cannot say that no properly instructed jury could have reasonably acquitted him. Any doubt that we may have as to whether he was prejudiced by this error, which, as we have noted, almost certainly induced the jury to consider their personal beliefs rather than to weigh the credibility of appellant's testimony with respect to his beliefs, must be resolved in his favor. *Cf. United States v. Alston*, 551 F.2d 315, 320–21 (D.C.Cir.1976) (minor ambiguity in burden of proof instruction held to be plain error where defendant's case rested solely upon his credibility). In short, we agree with the Fifth Circuit's holding in *Mann v. United States*, 319 F.2d at 409–10, that an incorrect instruction with respect to intent or wilfulness in a tax evasion prosecution constitutes a fundamental error going to the essence of the case and that an appellate court must take notice of such an error.

*Accordingly, the judgment is vacated and the case remanded to the district*

*court for further proceedings consistent with this opinion.*[5]

---

**5.** Unhappily, we note that defendant, sentenced to six months in prison, will have served most if not all of his sentence by the time our mandate issues.

