**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0361n.06

**No. 12-1438**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
*Apr 11, 2013*
DEBORAH S. HUNT, Clerk

CHARLES L. GARAVAGLIA,

      **Petitioner,**

v.

COMMISSIONER OF INTERNAL
REVENUE,

      **Respondent.**

**ON APPEAL FROM THE UNITED
STATES TAX COURT**

—————————————————————/

BEFORE:    CLAY, COOK, and ROTH,[*] Circuit Judges,

**CLAY, Circuit Judge.** Petitioners, a married couple that has been assessed an income tax deficiency, bring this appeal from the judgment of a tax court. Petitioner Charles Garavaglia was the owner of C&G consultants ("C&G"). Petitioner Ann Garavaglia was his wife and an employee of the consultancy. Mr. Garavaglia pleaded guilty to one count of mail fraud, 18 U.S.C. § 1341, and one count of conspiring to defraud the United States, 18 U.S.C. § 371, for participating in an insurance and tax fraud scheme. Based on a later audit, the Internal Revenue Service ("IRS") assessed a deficiency in Petitioners' tax returns for two years, as well as fraud and accuracy penalties pursuant to §§ 6662 and 6663 of the Internal Revenue Code. Petitioners brought the case to a United

---

[*]The Honorable Jane R. Roth, Circuit Judge for the United States Court of Appeals for the Third Circuit, sitting by designation.

States Tax Court, which upheld the IRS determination of an income tax deficiency. Petitioners now appeal, claiming that the tax court committed several procedural errors that require us to reverse its decision. For the following reasons, we **AFFIRM** the judgment of the tax court.

## BACKGROUND

This case concerns a tax fraud dating to the late 1980s.[1] In 1996, Mr. Garavaglia was indicted on nineteen counts, including mail fraud in violation of 18 U.S.C. § 1341, conspiracy to defraud the United States in violaton of 18 U.S.C. § 371, falsifying tax returns in violation of I.R.C. § 7206, and failure to file a tax form for heavy vehicle use in violation of I.R.C. § 7203. In 1997, he pleaded guilty to two of the counts in the indictment, and was later sentenced to twenty-seven months' imprisonment, a term of supervised release, and restitution and fines. The plea bargain specified that Mr. Garavaglia would still be liable for any further tax deficiencies found and proven. In October 2006, the IRS sent Mr. Garavaglia a notice of deficiency, asserting that he owed federal income taxes from 1989 and 1990. In May 2009, the IRS sent a notice of deficiency to Ms. Garavaglia, for the same years' returns. Petitioners challenged the findings of deficiencies in tax court, in Detroit, Michigan, and on September 26, 2011, the tax court confirmed the Commissioner's determination of a deficiency. A final decision of the tax court was entered on January 13, 2012. Petitioners now appeal.

The facts of this case are addressed in great detail in the opinion of the tax court, and neither party challenges its findings with respect to the basic background of the case. Mr. Garavaglia

---

[1]Ordinarily, the statute of limitations for tax deficiencies is three years, but it is inapplicable in cases of fraud or concealment. I.R.C. § 6501(c)(1).

married Ms. Garavaglia in September 1961 while he was working as a labor consultant for Central Transport, Inc. ("Central"). He advanced at Central until 1986, when he was fired. As part of a settlement agreement with Central, he was paid an annual consulting fee of $50,000.00, which went directly to his wholly owned S corporation, C&G Consultants ("C&G"). C&G was a labor consultancy, which also received payments from employee leasing companies that Mr. Garavalgia owned. Ms. Garavaglia was a homemaker, until 1989, when she became a secretary for one of Mr. Garavaglia's employee leasing companies. By the end of 1988, Petitioners had assets of about $1 million. George Rogers, who met Mr. Garavaglia when they were both at Central, also ran a consulting company, Sentury Services, Inc. ("Sentury") which provided similar services to C&G. He co-owned at least two employee leasing companies with Mr. Garavaglia. Douglas and Leroy Yarnell were employees in the accounting department of one of Mr. Rogers' leasing companies, D&S leasing ("D&S"). The Yarnells left D&S in 1986, and formed LTD Accounting, Inc. ("LTD") with Tim Yarnell (Douglas's brother and Leroy's son.) Mr. Garavaglia and Mr. Rogers were also co-owners of Trans Continental Leasing, Inc. ("Trans").

An employee leasing company effectively operates as a payroll manager for other businesses. An employee of a business is placed on the payroll of the leasing company, which for a fee, handles payroll management, including issuing paychecks, tax withholding and reporting, and insurance. Because the leasing companies act as the middle-men for insurance payments, there is the possibility that they can under-report the number of employees from a client company, and pocket the difference between what they take from the client companies to cover insurance and what they pay to the

insurance companies for premiums. Because of this risk, insurance companies occasionally perform audits of employee leasing companies.

Throughout 1989 and 1990, Mr. Garavaglia's companies under-reported payroll by about 75%. In addition to failing to pay the total amount due in premiums to insurance companies, the companies reported the full amount due as a business expense for the purposes of both state and federal taxes. This was discovered after a workers' compensation audit determined shortfalls in Trans's premiums paid to an insurance company. The audit was handled by LTD. As a result of this audit, Mr. Rogers and Mr. Garavaglia had a falling out, and Mr. Garavaglia accused Mr. Rogers of embezzlement, while Mr. Rogers accused the Yarnells of manipulating the audit to make him look guilty. After the winding up of Trans was complete, Garavaglia and Leroy Yarnell incorporated Branch International ("Branch"). Mr. Garavaglia and his wife owned 70% of Branch, while Mr. Yarnell and his wife owned the remaining 30%. Branch engaged in the same under-reporting, and paid the difference in amounts reported and the amounts acquired to either C&G, LTD, or one of the Yarnells. In 1989 and 1990, the Garavaglias filed joint income tax returns, as well as returns for each of their companies.

In November 1991, a confidential informant alerted the tax authorities to the fact that Mr. Garavaglia had been evading taxes. Investigators with the Criminal Investigation Division of the Internal Revenue Service ("CID") contacted Leroy and Douglass. Neither of them mentioned this to Mr. Garavaglia. In 1992, tax agents met with the Yarnells, and offered Leroy immunity in exchange for information that could be used against Mr. Garavaglia. The subsequent investigation, including wiretaps of conversations between Mr. Garavaglia and Leroy Yarnell, led to Mr.

Garavaglia's arrest and indictment. Over 100 boxes of documents were taken during the execution of search warrants. Mr. Rogers and Mr. Garavaglia both pleaded guilty to charges related to the scheme in 1997.

As part of his plea agreement Mr. Garavaglia agreed that he could still be found liable for tax deficiencies during the time that his scheme was in operation. In December 2000, the IRS commenced an audit of Petitioners. The auditors spent over 200 hours examining the records seized during the criminal investigation. In September 2002, the IRS contacted the Garavaglias' lawyer and advised him that its recommendation would be a determination of "no change" to the Garavaglias' tax liability for 1989 and 1990. Later that month, the IRS sent the Garavaglias a Form 4549 letter indicating that the IRS would not be seeking any additional payments for tax years 1989 and 1990, but the form also indicated that the decision was not final because it was subject to review by the Area Director. The IRS also informed the Garavaglias that if their attorney did not pick up the seized records, they would be destroyed. Ultimately, the IRS returned twenty-five boxes of documents to the Garavaglias attorney. The investigators also contacted Mr. Rogers to ask what to do with the Trans documents. Mr. Rogers told the agent to destroy them.

Based on the letter sent by the IRS, Petitioners disposed of records from that period in either late 2003 or early 2004. Mr. Rogers also authorized the IRS to destroy records related to the Trans investigation. However, the audit was never formally closed, and in 2006, Petitioners were notified that the IRS had determined a significant deficiency. Petitioners then filed in tax court for relief from this audit, but the tax court largely affirmed the Commissioner's findings, and entered judgment, finding a tax deficiency of $97,070.00 for the year 1989, and of $114,683.00 for 1990,

as well as additions, such as penalties, of $72,805.50 for 1989, and $86,012.25 for 1990. Therefore, the total tax due is $370,570.75. Petitioners now appeal that judgment. We take jurisdiction pursuant to I.R.C. § 7482(a)(1).

## ANALYSIS

Petitioners do not challenge the sufficiency of the evidence supporting the determination of a deficiency, and instead argue that the tax court committed four procedural errors that require us to either reverse or vacate the tax court's decision.[2] Because Petitioners cannot show that the tax court committed any errors of law in its ultimate assessment of deficiency, and cannot show any clear error with respect to any of the tax court's findings of fact, they instead attempt to undermine the tax court's decision by arguing that there should have been a discovery sanction entered against Respondent, or in the alternative, that Respondent should have been estopped from bringing these notices of deficiencies based on several equitable doctrines.

### A.    The Spoliation of Evidence

Petitioners claim that the tax court should have imposed sanctions on the IRS because evidence was destroyed. They claim that had this evidence existed, they could have conclusively proven that certain payments from Trans were loans, and that because the IRS destroyed the evidence, they were entitled to have an adverse inference entered against the IRS with respect to that evidence. We reject this argument.

---

[2]Petitioners do not contest the amounts asserted by the tax court, and state that they are not attacking the sufficiency of the evidence. (Petr.'s Reply at 5 n.1.) In any event, the arguments over the validity of the tax court's determination, while raised in the tax court, have been waived by Petitioners, because they failed to raise them in their initial brief.

This Court reviews a lower court's decision to impose a sanction for spoliation of evidence for abuse of discretion. *Beaven v. U. S. Dep't of Justice*, 622 F.3d 540, 553 (6th Cir. 2010).[3] "A court abuses its discretion when it commits a clear error of judgment, such as applying the incorrect legal standard, misapplying the correct legal standard, or relying upon clearly erroneous findings of fact." *Jones v. Ill. Cent. R.R. Co.*, 617 F.3d 843, 850 (6th Cir. 2010). A spoliation sanction is permitted where:

> [A] party seeking an adverse inference instruction based on the destruction of evidence must establish (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed "with a culpable state of mind"; and (3) that the destroyed evidence was "relevant" to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.

*Beaven*, 622 F.3d at 553 (collecting cases). Petitioners cannot show that the tax court's decision was incorrect with respect to this test. Petitioners cannot show that the IRS acted with a culpable state of mind, such that the tax court had to have found that the records were destroyed negligently, recklessly, or wantonly. And even if the tax court found such evidence, a sanction for spoliation would have been permitted, but not required. *Adkins*, 554 F.3d at 652–53. Accordingly, there was no abuse of discretion for the tax court to refuse to impose a spoliation sanction on Respondent.

**B.     Equitable Estoppel**

Petitioners also argue the IRS should have been precluded from bringing the notice of deficiency because of equitable estoppel. Primarily, they argue that the IRS made representations

---

[3]The ability of a court to sanction litigants for spoliation is part of a court's inherent authority, *Adkins v. Wolever*, 554 F.3d 650, 652 (6th Cir. 2009) (en banc), and the decisions of tax courts are generally reviewed as if they were decisions of the district courts. *Greer v. Comm'r*, 557 F.3d 688, 690 (6th Cir. 2009).

to them that the audit was over, and because of these representations, they destroyed records that Petitioners might have used in mounting a defense. Accordingly, they argue, the IRS should not have been permitted to bring the notice of deficiency. The tax court rejected this contention. The application of equitable estoppel is a legal question, and is thus reviewed *de novo*. *In re Gardner*, 360 F.3d 551, 557 (6th Cir. 2004); *Smiljanich v. Gen. Motors Corp.*, 302 F. App'x 443, 447–48 (6th Cir. 2008).

Equitable estoppel has three elements: "(1) misrepresentation by the party against whom estoppel is asserted; (2) reasonable reliance on the misrepresentation by the party asserting estoppel; and (3) detriment to the party asserting estoppel." *Mich. Express, Inc. v. United States*, 374 F.3d 424, 427 (6th Cir. 2004). While it is possible for the government to be prevented from bringing a claim because of estoppel, the Supreme Court has never upheld a finding of estoppel against the government. *OPM v. Richmond*, 496 U.S. 414, 422 (1990).[4] In addition, the Supreme Court has stated that a litigant seeking estoppel has a higher burden when the counter-party is the government. *Id.* at 419–20.

Taxpayers allege that they received affirmative notice from the IRS, which constituted a misrepresentation, that the audit was closed. In fact, what they received, through their lawyer, was notice from an Assistant United States Attorney that he had been told, informally, that the audit was going to be closed. But this is insufficient for a misrepresentation made by the party against whom estoppel is being asserted, as it is not attributable to the IRS itself. Furthermore, even if construed

---

[4]While that case was published in 1990, we have found no subsequent cases that upheld a finding of equitable estoppel against the government.

as such, it was not notice that the investigation was closed, and could not have been reasonably relied on as such because Revenue Procedure 2005-32 § 4.01(1) specifically requires notification from the IRS in order to close the audit. *Id.* ("[A]n agreed case is closed after examination when the Service notifies the taxpayer in writing after a conference, if any, of adjustments to the taxpayer's liability or acceptance of the taxpayer's tax return or exempt status without change."). In addition, that notice stated that the IRS might choose to re-open its investigation. The only other written correspondence that the Petitioners received was a form which asked them to comment on the procedure of having experienced an audit. But a government form, printed without reference to Petitioners' case, would not lead a reasonable person to conclude that a tax audit was complete. And the failure to notify a taxpayer that there may be additional investigation is insufficient to render a finding of deficiency invalid. *Ballantine v. Comm'r*, 74 T.C. 516, 524 n.13 (1980).[5] Accordingly, this Court finds that Petitioners failed to show that they were entitled to the defense of equitable estoppel.

### C. Abandonment of Claims and Judicial Admissions

Petitioners assert that there were discrepancies in the pleadings submitted by the IRS. They claim that the IRS changed its theory of taxpayer liability between its first notice of deficiency and its second amended answer. Petitioners also claim that the initial allegations of the IRS constituted judicial admissions and accordingly, should have bound the IRS to that particular theory of the alleged tax deficiency. This Court reviews the determination of what issues were properly raised in the court below for abuse of discretion. *Kovacevich v. Kent State Univ.*, 224 F.3d 806, 831 (6th Cir.

---

[5]Internal Revenue Code § 7605(b) limits the IRS to one investigation of a return, unless there is notice, but this does dispose of the issue before the Court because unless the audit is formally closed, there has only been one investigation.

2000). Similarly, a lower court's determination that a party's statement in its pleadings constitutes a judicial admission is reviewed for abuse of discretion. *MacDonald v. Gen. Motors Corp.*, 110 F.3d 337, 340 (6th Cir. 1997).

The specific dispute is that in its initial notice of deficiency, the Commissioner alleged that Trans and Branch were C corporations. Petitioners' pleadings asserted that the corporations in question were S corporations, which would have led to the accrual of taxable income—ultimately attributable to Petitioners based on their ownership share of each to the corporations—when the funds went into Trans and Branch, rather than directly accruing as income to Petitioners when the money passed through the corporations. Based on this, the Commissioner sought, and received, permission to file an amended answer, in which he advanced the theory that Trans and Branch were S corporations. As a result, the asserted deficiency in 1989 was reduced and the deficiency for 1990 was increased.

In September 2009, the tax court directed the parties to file memoranda addressing what issues were to be resolved by the court, and what the parties' positions and theories were with respect to those positions.[6] Because of this, many of the Petitioners' arguments as to why the Commissioner should have been bound by the initial pleading are inapposite. A party is permitted to amend its pleadings. And the general rule is that pleadings generally do not admit or deny conclusions of law. *See, e.g.*, *Nortz v. United States*, 294 U.S. 317, 324–25 (1935). Pleadings only become admissions if they have not been so amended, a standard conceded by Petitioners. The reasoning behind the rule

---

[6]Though the court had ordered the parties to submit these memoranda by January 26, 2010, they were ultimately submitted in June 2010.

that pleadings can become admissions is that the system of pleadings is designed to give parties proper notice of what the other party intends to try to prove in court. *See, e.g.*, *Dains v. I.R.S.*, 149 F.3d 1182 (6th Cir. 1998) (unpublished table opinion). There is no question in this case that the Garavaglias had notice of the Commissioner's theories of deficiency, and therefore, there is no basis for this Court to find an abuse of discretion in the tax court's decision not to find that the Commissioner was bound by his initial pleadings.

### D.      The Innocent Spouse Exception

Mrs. Garavaglia seeks innocent spouse relief under §§ 6015(b) and 6015(f). The former provision establishes the exception, while the latter is a catch-all provision giving the Commissioner authority to grant the same relief if equity demands it. Whether or not a taxpayer is an "innocent spouse" under I.R.C. § 6015(b) is a question of fact, which this Court reviews for clear error, while the question of whether or not to award a taxpayer equitable relief under that I.R.C. § 6015(f) is reviewed for abuse of discretion. *Greer*, 595 F.3d at 344.

As a general matter, spouses who file joint returns for their income taxes are jointly and severally liable for the entirety of a yearly tax assessment. This is because the tax code often has a preferential rate structure for spouses who file together. *See* I.R.C. § 1. But in certain circumstances, a spouse can claim an exemption from this liability, if the spouse can show that he or she is an "innocent spouse." I.R.C. § 6015(a). Under this section, a spouse may receive relief if:

> (A) a joint return has been made for a taxable year;
> (B) on such return there is an understatement of tax attributable to erroneous items of one individual filing the joint return;
> (C) the other individual filing the joint return establishes that in signing the return he or she did not know, and had no reason to know, that there was such understatement;

11

(D) taking into account all the facts and circumstances, it is inequitable to hold the other individual liable for the deficiency in tax for such taxable year attributable to such understatement . . . .

*Id*. § 6015(b)(1). If relief is unavailable under this subsection, but it would still be inequitable to hold the spouse liable, then the Secretary of the Treasury may nonetheless relieve the spouse of liability under § 6015(f).

In order to obtain relief under this section, a petitioner bears the burden of proof in showing that she is an "innocent spouse." *See* Tax Ct. R. 142(a)(1). Ms. Garavaglia did not make such a showing because she did not show that she had "no reason to know" of the understatement. In evaluating whether she had reason to know, this Court considers the petitioner's level of education, involvement in the couple's financial and business affairs, lavish expenditures, and deceit of the other spouse. *Greer*, 595 F.3d at 347. Ms. Garavaglia was a high school graduate, and was the secretary of at least one of the leasing companies during the applicable tax years. While she had been a homemaker up until that point, the combination of her employment at the company and participation at C&G board meetings, as well as the couple's lifestyle, which included significant assets, should have raised her awareness of a potential tax deficiency. Her major defense to this point is that she did not review the tax returns, but a taxpayer is presumed to be aware of the contents of the returns, which are signed under penalty of perjury. Finally, there is no evidence that Mr. Garavaglia deceived her about the returns. Accordingly, it was not clear error for the tax court to refuse to afford relief to Ms. Garavaglia as an "innocent spouse."

In determining whether a spouse who is not otherwise eligible for relief should nonetheless be considered an innocent spouse, a tax court is to consider the spouse's current marital status,

history of abuse, physical or mental health problems, subsequent compliance with federal tax law, and economic hardship.  Rev. Proc. 2003-61 § 4.03, 2003-2 C.B.  Ms. Garavaglia did not show any evidence of these factors, and therefore, we find no abuse of discretion in the tax court's decision not to relieve her of liability.

## CONCLUSION

The judgment of the tax court is **AFFIRMED.**