# United States Tax Court

T.C. Memo. 2024-26

ZOFIA KRASZEWSKA,
Petitioner,
AND SIMON P. RICKS, JR.,
Intervenor

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————————

Docket No. 10508-21.                          Filed February 28, 2024.

————————

Zofia Kraszewska, pro se.

Simon P. Ricks, Jr., pro se.

*Paulmikell A. Fabian*, for respondent.


### MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, *Judge*: Zofia Kraszewska (petitioner) and Simon P. Ricks, Jr. (intervenor), filed a joint federal income tax return for tax year 2017. By notice of deficiency dated February 26, 2021, respondent determined a deficiency in their 2017 federal income tax of $6,931 and a section 6662(a)[1] accuracy-related penalty of $1,377.40. Petitioner seeks review of the notice of deficiency. The sole issue for decision is whether petitioner is entitled to relief under section 6015(b).

Intervenor did not petition this Court in response to the notice of deficiency but later intervened in this case to oppose petitioner's request

———

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure.

[*2] for relief from joint and several liability. Petitioner and respondent agree that she is entitled to section 6015(b) relief for the year at issue. However, intervenor opposes such relief.

For the reasons that follow, we hold that petitioner is entitled to full relief from the deficiency and accuracy-related penalty under section 6015(b).

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found here and throughout. The Stipulation of Facts and the accompanying Exhibits are incorporated by this reference. Petitioner and intervenor resided in states where an appeal would normally lie to the U.S. Court of Appeals for the Ninth Circuit when the Petition and Notice of Intervention were filed.[2] *See* § 7482(b).

I.    *Petitioner and Intervenor's Marriage*

Petitioner and intervenor met in 2014. When petitioner first met intervenor, she was residing and working in the United States on an L–1 visa.[3] Petitioner was not a citizen of the United States, but her job required frequent international travel. Upon the conclusion of her work assignment, she left the United States but maintained a long-distance relationship with intervenor.

Petitioner visited intervenor in the United States multiple times, without remaining in the country permanently. She and intervenor married in September 2016, and petitioner moved to the United States to reside with intervenor.

Before the marriage, petitioner was consistently employed and earned a comfortable living. However, petitioner ceased to be employed when she moved to the United States, and for the duration of her unemployment petitioner remained financially reliant on intervenor.

The couple maintained separate and joint bank accounts, and intervenor remained secretive about his finances. Intervenor did not

---

[2] By Order issued August 1, 2022, the Court sealed petitioner's contact information.

[3] The L–1 nonimmigrant visa enables an executive, manager, or employee with specialized knowledge to work and reside in the United States if that individual has been employed continuously for one year by a sponsoring employer. 8 U.S.C. § 1101(a)(15)(L).

[*3] share his financial information with petitioner and refused to answer questions about the details of the household finances. Consequently, from the outset of the marital relationship, intervenor controlled the financial aspects of their life together. In this regard, intervenor was not forthcoming with any financial information, was consistently evasive, and when approached with questions would not provide petitioner with answers.

Over time, the marriage became strained. Tensions between petitioner and intervenor erupted in March 2019 when intervenor demanded that petitioner vacate their residence and ejected her from the premises.[4] Petitioner did not return to their marital home, and her communication with intervenor was limited. At some point thereafter, the parties obtained a divorce decree.

## II.    *Control of Financial Matters*

Throughout their marriage intervenor controlled all financial aspects of the household. He was the primary breadwinner and maintained a joint checking account through which all of his income and expenses flowed, including the tax refund issued as a result of the 2017 tax return. By the 2017 tax year, petitioner was employed and reported income of her own on their joint return. Nevertheless, petitioner's knowledge of intervenor's finances as reported on the 2017 return was limited to the activity in their joint checking account, which was minimal.

## III.    *Preparation of the 2017 Joint Tax Return*

Petitioner and intervenor's 2017 tax return was prepared by intervenor as "married filing jointly" and electronically filed using TurboTax. Intervenor told petitioner that he did not want her to be involved in the tax preparation process because she lacked familiarity with the American tax system. Petitioner therefore turned over her relevant tax documents to intervenor, but her participation ended there.

After preparing the return, intervenor instructed petitioner to electronically sign it with a personal identification number (PIN),[5]

---

[4] The parties dispute the events leading up to petitioner's departure from their mutual home.

[5] In lieu of a wet signature, a taxpayer who files a return electronically will apply an electronic signature. To do so, the taxpayer selects a five-digit PIN. The

**[*4]** which she did. Intervenor did not show her any part of the return, other than the portion where she entered her electronic signature.

IV.     *Tax Reporting and Notice of Deficiency*

Petitioner and intervenor filed their 2017 joint tax return on April 7, 2018. They reported wages of $148,727 and itemized deductions of $77,543, including unreimbursed employee expenses of $30,987 attributable to intervenor and $6,296 attributable to petitioner.

V.     *Petitioner's Request for Innocent Spouse Relief*

Petitioner timely filed a Petition with this court in which she asserted that she was entitled to innocent spouse relief under section 6015; however, she did not request redetermination. Intervenor did not respond to the notice of deficiency and therefore defaulted on it. Instead, intervenor filed a Notice of Intervention on May 10, 2022, disputing petitioner's claim for innocent spouse relief but not the underlying liability.

On August 20, 2019, the Internal Revenue Service's (IRS) Cincinnati Centralized Innocent Spouse Operation received petitioner's Form 8857, Request for Innocent Spouse Relief, in which she requested relief for the 2017 tax year under section 6015(b), (c), or (f). She submitted a 4-page letter, a 1-page F8857 Amendment, bank account statements, and 83 pages of additional documents.

In her application petitioner explained that she did not review the return before it was filed because intervenor prevented her from doing so. She further stated that she had no knowledge of the contents of the return, nor did she at any time have any indication that the return contained erroneous items.

Petitioner's submissions to respondent also indicated, in relevant part, that intervenor (1) made her afraid to disagree with him, (2) controlled all aspects of their finances, (3) was "very secretive" regarding all financial matters.

In response to petitioner's administrative request for relief, intervenor filed Form 12508, Questionnaire for Non-Requesting Spouse, and subsequently a Notice of Intervention. Intervenor disputed

---

taxpayer will input this five-digit PIN into his tax preparation software after completing his return, before transmitting into the Internal Revenue Service.

**[\*5]** petitioner's assertions and alleged, among other things, that petitioner had (1) helped prepare their tax return, (2) reviewed the return before it was filed, (3) was aware of every step of the tax preparation process, and (4) received part of the tax refund.

The tax examiner assigned to the case informed intervenor that, if he had additional documents to provide, those documents would be weighed in the decision whether to grant relief.

However, intervenor never provided any additional documentation. Relying on petitioner's statements and documentation alone, the examiner concluded that petitioner was unaware of the deductions which gave rise to the deficiency; therefore, the IRS granted petitioner relief for the 2017 tax year under section 6015(b).

Despite granting relief to petitioner, respondent subsequently issued a notice of deficiency to both petitioner and intervenor for their 2017 tax year. The notice of deficiency does not incorporate the administrative determination that petitioner is entitled to section 6015(b) relief.

Petitioner timely filed her Petition with this Court on March 30, 2021. Pursuant to section 6015(e)(4) and Rule 325, intervenor subsequently became a party to this case, opposing relief. At trial, respondent agreed with petitioner that she is entitled to section 6015(b) relief for the year at issue.

## OPINION

### I.    *Jurisdiction*

There are three jurisdictional bases for the Court to review a taxpayer's entitlement to section 6015 relief. *See Maier v. Commissioner*, 119 T.C. 267, 270–71 (2002), *aff'd*, 360 F.3d 361 (2d Cir. 2004). First, a spouse can file a petition pursuant to section 6015(e)(1). *See Maier*, 119 T.C. at 270–71. Second, the Court can review the claim in the context of a CDP case under section 6330(d)(1). *See Maier*, 119 T.C. at 271. Third, the claim can be asserted by a spouse as an affirmative defense in a proceeding to redetermine a deficiency pursuant to section 6213(a). *See Maier*, 119 T.C. at 270.

Petitioner timely petitioned this Court in response to the notice of deficiency. She raised her claim for relief as an affirmative defense to the deficiency and penalty determined therein. Accordingly, this Court

**[\*6]** has jurisdiction to review petitioner's claim for relief under section 6213(a).

II.    *Evidentiary Matter*

The parties filed Simultaneous Opening and Answering Briefs as directed by the Court. Petitioner's and intervenor's briefs contain factual assertions that are not part of the trial record. Statements in briefs do not constitute evidence. Rule 143(c); *Evans v. Commissioner*, 48 T.C. 704, 709 (1967), *aff'd per curiam*, 413 F.2d 1047 (9th Cir. 1969); *Chapman v. Commissioner*, T.C. Memo. 1997-147, 1997 WL 125770, at \*4; *Berglund v. Commissioner*, T.C. Memo. 1995-536, 1995 WL 670068, at \*4. The record in this case was closed at the conclusion of trial on May 1, 2023. In reaching our conclusion, we have considered only the testimony and other evidence admitted at trial and ignore those portions of petitioner's and intervenor's Briefs that are not supported by the trial record.

III.    *Section 6015*

Generally, married taxpayers may elect to file a joint federal income tax return. *See* § 6013(a). If a joint return is made, the tax is computed on the spouses' aggregate income, and each spouse is fully responsible for the accuracy of the return and is jointly and severally liable for the entire amount of tax shown on the return or found to be owing. § 6013(d)(3); *Butler v. Commissioner*, 114 T.C. 276, 282 (2000). Nevertheless, under certain circumstances, a spouse who has made a joint return may seek relief from joint and several liability under procedures set forth in section 6015, which provides a spouse with three alternatives: (1) full or partial relief under subsection (b), (2) proportionate relief under subsection (c), or (3) if relief is not available under subsection (b) or (c), equitable relief under subsection (f).

Generally, the spouse requesting relief bears the burden of proof. *See* Rule 142(a); *Alt v. Commissioner*, 119 T.C. 306, 311 (2002), *aff'd*, 101 F. App'x 34 (6th Cir. 2004). However, to the extent that the Commissioner is no longer an adverse party to the taxpayer and the intervenor opposes relief, the burden of proof would presumably shift to the intervenor. *See Stergios v. Commissioner*, T.C. Memo. 2009-15, 2009 WL 151485, at \*4 (first citing *King v. Commissioner*, 115 T.C. 118 (2000); and then citing *Corson v. Commissioner*, 114 T.C. 354, 363 (2000)). We need not decide whether the burden of proof shifts in the instant case

**[\*7]** because we decide the issues by a preponderance of the evidence. *See id.*; *see also Porter v. Commissioner*, 132 T.C. 203, 214 (2009).

For the reasons below, we will grant petitioner full relief under section 6015(b).

IV.     *Qualifications for Section 6015(b) Relief*

To qualify for relief from joint and several liability under section 6015(b)(1), a taxpayer must establish that:

> (A) a joint return has been made for a taxable year;
> (B) on such return there is an understatement of tax attributable to erroneous items of one individual filing the joint return;
> (C) the other individual filing the joint return establishes that in signing the return he or she did not know, and had no reason to know, that there was such understatement;
> (D) taking into account all the facts and circumstances, it is inequitable to hold the other individual liable for the deficiency in tax for such taxable year attributable to such understatement; and
> (E) the other individual elects (in such form as the Secretary may prescribe) the benefits of this subsection not later than the date which is 2 years after the date the Secretary has begun collection activities with respect to the individual making the election, . . . .

The requirements of section 6015(b)(1) are stated in the conjunctive. Accordingly, a failure to meet any one of them prevents a requesting spouse from qualifying for relief offered therein.

It is undisputed that a joint return has been made for the taxable year at issue, that there was an understatement of tax on that return, and that petitioner's request for relief was timely filed. Therefore, we need not address subparagraphs (A), (B), and (E).

Accordingly, we next address (1) whether petitioner had knowledge or reason to know of the understatement under subparagraph (C) and (2) whether it is inequitable to hold her liable for the deficiency in tax and the penalty attributable to the understatement under subparagraph (D).

**[\*8]**   A.   *Petitioner Has Met the Requirements of Section 6015(b)(1)(C)*

Respondent and petitioner agree that she did not know or have reason to know about the understatement in the 2017 joint tax return. Conversely, intervenor asserts that petitioner was sufficiently involved in the preparation of their joint 2017 tax return that she had reason to know of the deductions and, therefore, the understatement. For the reasons below, we resolve this disagreement in petitioner's favor.

Because of intervenor's concealment of all aspects of his finances from petitioner, we find that for tax year 2017 petitioner neither knew, nor had reason to know, of the origin of intervenor's deductions claimed on the joint income tax return. Because petitioner was not involved in intervenor's employment or business activities and the parties maintained separate bank accounts, petitioner could not obtain any knowledge of intervenor's finances, income, or expenses. Without this information, petitioner could not have had any knowledge of the underlying expenses.

Additionally, other than providing intervenor with her tax documents, petitioner did not participate in the return preparation. Although intervenor solicited petitioner's electronic signature, and although petitioner provided it, she was never given the opportunity to examine the contents of the return and may have been prevented from doing so.

At trial, petitioner credibly testified that intervenor was secretive and evasive regarding all of the household finances during their marriage. We found petitioner's testimony credible and consistent with her allegations in the administrative record.

We further find that petitioner's lack of involvement was by the design of intervenor, and with respect to the 2017 joint return, petitioner had no actual or constructive knowledge of its contents. In the light of the foregoing, petitioner satisfies the lack of knowledge requirement for the year at issue.

B.   *Petitioner Has Met the Requirements of Section 6015(b)(1)(D)*

Under section 6015(b)(1)(D), we must determine whether, taking into account all facts and circumstances, it is inequitable to hold petitioner liable for the deficiency in tax attributable to the

**[*9]** understatement. The factors we consider in determining inequity for purposes of section 6015(b)(1)(D) are the same factors that we consider in determining inequity for purposes of section 6015(f). *Garavaglia v. Commissioner*, T.C. Memo. 2011-228, 2011 WL 4448913, at \*32, *aff'd*, 521 F. App'x 476 (6th Cir. 2013); *Crouse v. Commissioner*, T.C. Memo. 2011-97.

In Rev. Proc. 2013-34, § 4.03, 2013-43 I.R.B. 397, 400–03, *modifying and superseding* Rev. Proc. 2003-61, 2003-2 C.B. 296, the Commissioner provided a list of nonexclusive factors to take into account when determining whether to grant equitable relief under section 6015(f): (1) marital status; (2) economic hardship; (3) in the case of an understatement, knowledge or reason to know of the item giving rise to the understatement; (4) legal obligation; (5) significant benefit; (6) compliance with tax laws; and (7) mental or physical health. We will address each factor in turn.

### 1. *Marital Status*

If the requesting spouse is no longer married to the nonrequesting spouse as of the time of our determination, this factor will weigh in favor of granting relief. *See* Rev. Proc. 2013-34, § 4.03(2)(a), 2013-43 I.R.B. at 400. Petitioner and intervenor have obtained a divorce decree. Therefore, we find that this factor weighs in favor of relief to petitioner.

### 2. *Economic Hardship*

We find that petitioner will experience economic hardship if relief from the liability is not granted given her current level of income. *See Walters v. Commissioner*, T.C. Memo. 1998-111; *Dillon v. Commissioner*, T.C. Memo. 1998-5. Therefore, we find that this factor weighs in favor of granting relief to petitioner.

### 3. *Knowledge or Reason to Know*

As we concluded above, petitioner did not know and had no reason to know of the items giving rise to the understatement for the year at issue. Therefore, we find that this factor weighs in favor of granting relief to petitioner.

**[\*10]**      4.      *Petitioner's History of Tax Compliance*

The record does not establish a history of tax noncompliance by petitioner. Therefore, we find that this factor weighs in favor of granting relief to petitioner.

5.      *Legal Obligation, Significant Benefit, and Health*

On the basis of the record, we conclude that the parties have not otherwise agreed to allocate the tax liability. The record does not establish that petitioner received a benefit due to the understatement of tax. However, petitioner offered extensive medical records at trial that indicated a history of various health problems. Therefore, we find that the legal obligation, significant benefit, and mental or physical health factors collectively weigh in favor of granting relief to petitioner.

V.      *Conclusion*

Accordingly, we find that petitioner has satisfied all the requirements for relief under section 6015(b) and is therefore entitled to relief from joint and several liability on the joint return for the year at issue.

We have considered all arguments made in reaching our decision and, to the extent not mentioned, we conclude that they are moot, irrelevant, and without merit.

To reflect the foregoing,

*Decision will be entered for petitioner.*